# BARBARA L. HIBNER ET AL. *v.* HELEN J. BRUENING ET AL.
## (AC 22808)

Lavery, C. J., and Flynn and Peters, Js.

Argued May 8—officially released August 5, 2003

*William B. Bilcheck, Jr.*, for the appellants (plaintiffs).

*Edward P. Brady III*, for the appellees (defendants).

*Opinion*

FLYNN, J. The plaintiffs, Barbara L. Hibner, Samuel Hibner and Stephen Ayer, appeal from the judgment of the trial court dismissing their action against the defendants, Helen J. Bruening and Donald J. Bruening. This case arose out of an automobile negligence action brought by the plaintiffs.[1] The court granted the defendants' motion to dismiss on the basis of ineffective service of process because the judicial marshal, Joseph D. Nardini, executed constructive service rather than in hand or abode service at their address at 24 Rustic Lane in Madison. On appeal, the plaintiffs claim that the court improperly granted the defendants' motion to dismiss due to lack of personal jurisdiction. We reverse the judgment of the court because we conclude that Nardini's return and affidavit adequately showed that it was "impossible" to make personal or abode service of process at the operator's last address on file with the department of motor vehicles and that General Statutes § 52-63 (b) thus permitted service on the commissioner of motor vehicles (commissioner).

The parties are not in dispute about the pertinent facts and agree that the principal issue to be decided is whether § 52-63 (b), which permits constructive service on the commissioner, requires that it be absolutely "impossible" for the marshal to serve the process at the address listed on file with the commissioner. The plaintiffs argue that substitute service on the commissioner may be made when personal or abode service

---

[1] The complaint alleged that Donald J. Bruening was the owner of the vehicle and that Helen J. Bruening was the operator.

has been attempted several times, unsuccessfully, and continued attempts are not practical.

Proper service of process is not some mere technicality. "Proper service of process gives a court power to render a judgment which will satisfy 'due process' under the 14th amendment of the federal constitution and equivalent provisions of the Connecticut constitution and which will be entitled to recognition under the 'full faith and credit' clause of the federal constitution." 1 R. Bollier, N. Cioffi, K. Emmett, J. Kavanewsky & L. Murphy, Stephenson's Connecticut Civil Procedure (3d Ed. 1997) § 11 (b), p. 20. All process must be served at least twelve days before the return date, including the day of service and excluding the return day. General Statutes § 52-46. Marshals and constables are directed to make a return in writing on the process they serve. General Statutes §§ 6-32 (marshals); 7-89 (constables). The return includes "a short account in writing, of the manner in which [the marshal] executed it." (Internal quotation marks omitted.) 1 R. Bollier, N. Cioffi, K. Emmett, J. Kavanewsky & L. Murphy, supra, § 17 (a), p. 34.

The standard of our review on this issue of statutory construction is plenary. *State* v. *William B.*, 76 Conn. App. 730, 754, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003). Statutory interpretation is a question of law. *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 728, 778 A.2d 899 (2001). "When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the

legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) Id. "[I]n the absence of guidance from the language of the statute or the legislative history, we look to common law principles . . . . It is assumed that all legislation is interpreted in light of the common law at the time of enactment." (Internal quotation marks omitted.) *State* v. *Miranda*, 245 Conn. 209, 220 n.13, 715 A.2d 680 (1998), on appeal after remand, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).

"We construe each sentence, clause or phrase to have a purpose behind it. . . . In addition, we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results." (Citations omitted; internal quotation marks omitted.) *Collins* v. *Colonial Penn Ins. Co.*, supra, 257 Conn. 728–29. "Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended. . . . No word or phrase in a statute is to be rendered mere surplusage. . . . In applying those principles, we keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result." (Citation omitted; internal quotation marks omitted.) *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 276, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001). In construing a statute that is remedial, we do so liberally "in favor of those whom the legislature intended to benefit." *Coppola* v. *Coppola*, 243 Conn. 657, 664, 707 A.2d 281 (1998).

This case involves the interplay of two distinct statutes. The first of these is General Statutes § 52-57 (a), which provides: "Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or

complaint, with the defendant, or at his usual place of abode, in this state." The clear impact of § 52-57 (a) is that one of its two alternatives, personal or abode service, must be followed "[e]xcept as otherwise provided" in the General Statutes. See General Statutes § 52-57 (a). The second of these two statutes, § 52-63 (b), provides: "Service of civil process may be made on a motor vehicle operator licensed under the provisions of chapter 246 by leaving a true and attested copy of the writ, summons and complaint at the office of the [c]ommissioner of [m]otor [v]ehicles at least twelve days before the return day and by sending such a true and attested copy at least twelve days before the return day, by registered or certified mail, postage prepaid and return receipt requested, to the defendant at his last address on file in the [d]epartment of [m]otor [v]ehicles if (1) it is *impossible* to make service of process at the operator's last address on file in the [d]epartment of [m]otor [v]ehicles, and (2) the operator has caused injury to the person or property of another."[2] (Emphasis added.)

"[I]n the absence of . . . statutory . . . guidance, [the court] may appropriately look to the meaning of

---

[2] The legal analysis of this decision is being applied to both General Statutes § 52-63 (b) and (c). Section 52-63 (b) applies to the service of process on Helen J. Bruening, the operator of the motor vehicle. Section 52-63 (c) applies to the service of process on Donald J. Bruening, the owner of the motor vehicle.

General Statutes § 52-63 (c) provides: "Service of civil process may be made on the owner of a motor vehicle registered under the provisions of chapter 246 by leaving a true and attested copy of the writ, summons and complaint at the office of the [c]ommissioner of [m]otor [v]ehicles at least twelve days before the return day and by sending such a true and attested copy at least twelve days before the return day, by registered or certified mail, postage prepaid and return receipt requested, to the defendant at his last address on file in the [d]epartment of [m]otor [v]ehicles if (1) it is *impossible* to make service of process at the owner's last address on file in the [d]epartment of [m]otor [v]ehicles, (2) the owner has loaned or permitted his motor vehicle to be driven by another, and (3) the motor vehicle has caused injury to the person or property of another." (Emphasis added.)

the [word] as commonly expressed in the law and in dictionaries." (Internal quotation marks omitted.) *Vitti v. Allstate Ins. Co.*, 245 Conn. 169, 178, 713 A.2d 1269 (1998). The American Heritage Dictionary defines "impossible" as "[n]ot capable of existing or happening." It also, however, gives us a second meaning, "[h]aving little likelihood of happening or being accomplished." Id. It is the second meaning that we conclude the legislature intended when it adopted § 52-63 (b).

In construing the statute, we conclude that we must look at what the term was intended to accomplish. The purpose of this statute clearly is to bring about a practical result, to ensure actual notice to the defendants that an action has been commenced. See *Cato v. Cato*, 226 Conn. 1, 18, 626 A.2d 734 (1993).

Furthermore, our Supreme Court has expressed a policy "to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) *Coppola v. Coppola*, supra, 243 Conn. 665. Interpretations must be liberal when strict adherence will bring injustice; see id.; and when a statute is subject to two possible interpretations, the court will adopt that which makes the statute effective and workable rather than that "which leads to absurd consequences and bizarre results." *State v. Rodgers*, 198 Conn. 53, 61, 502 A.2d 360 (1985).

When notice is given to a defendant of the commencement of a legal action, there must also be substantial compliance with the service of process statutes. *Cato v. Cato*, supra, 226 Conn. 18. We conclude that by construing the term "impossible" to include situations where personal or abode service has little likelihood of happening or being accomplished, the statute becomes effective and workable.

Having concluded that the word "impossible" in § 52-63 (b) also encompasses an impractical situation, we now must determine whether there was little likelihood of effective personal or abode service at the defendants' usual place of abode. In the present case, we conclude that the undisputed facts of this situation fell within the statutory definition of "impossible."

The following additional facts taken from Nardini's affidavit are pertinent to our inquiry.[3] Nardini swore in his affidavit that he attempted on several occasions to serve the defendants personally at the 24 Rustic Lane address, but no one answered the door or was present to accept service. Nardini also averred that he unsuccessfully attempted to learn through the United States Post Office whether the defendants still lived at the Rustic Lane address. Finally, on October 12, 2001, two days before the statute of limitations would have expired, Nardini served the papers on the commissioner of motor vehicles and mailed a certified copy of the writ, summons and complaint to the defendants' last known address as is provided in § 52-63 (b).

[3] Although we do not rest our decision on the proximity of the statute of limitations and the need to make service twelve days before the return date, we do note that the plaintiffs' complaint indicates that the defendants' negligence occurred on September 30, 1999. Under General Statutes § 52-584, the plaintiffs' claims against the defendants had a two year statute of limitations, which would have expired on September 30, 2001. Nardini's return indicates that he received the writ of summons and complaint from the plaintiffs' attorney on September 29, 2001, one day before the statute of limitations was to expire. The writ of summons and complaint were given a return date of October 30, 2001. Under § 52-63, a marshal must complete service of process twelve days before the return date. Due to the fact that the process was delivered to the marshal before the statute of limitations expired, the plaintiffs' complaint fell within General Statutes § 52-593a. That statute allows a right of action to continue after the statute of limitations has expired if the marshal (1) receives the writ of summons and complaint before the statute of limitations has expired and (2) service of process occurs within fifteen days of the marshal receiving the papers. Accordingly, Nardini had until October 14, 2001, to achieve service of process or the statute of limitations would have expired. Service was made on the commissioner on October 12, 2001.

A proper officer serving process must comply with the provisions of § 52-57 (a), which require that process be served by leaving it "with the defendant, or at his usual place of abode . . . ." If Nardini simply left the papers at a place where the defendants did not live, service would not have been effective and jurisdiction would not have vested in the court. See *Bove* v. *Bove*, 77 Conn. App. 355, 363, 823 A.2d 383 (2003). Abode service is not effective if it is left at an address that is not the usual address of the party to be served, and an action commenced by such improper service must be dismissed. *Collins* v. *Scholz*, 34 Conn. Sup. 501, 506, 373 A.2d 200 (1976).

In dismissing the plaintiffs' case, the court held that "[n]either the return nor the affidavit of marshal Nardini supports a conclusion that it was 'impossible to make service of process at the owner's last address on file . . . .' General Statutes § 52-63 (c) (1)." The court therefore determined that it lacked personal jurisdiction.

The trial court cited *Moses* v. *Kunst*, Superior Court, judicial district of New Haven, Docket No. 452348 (October 1, 2001) (30 Conn. L. Rptr. 458), as authority for its decision. In *Moses*, the plaintiff never filed an opposition to the motion to dismiss, and no affidavit was produced indicating that the marshal had made several attempts at personal service and could not establish to his satisfaction that the dwelling was the defendant's usual place of abode; id., 458–59; such as was made by Nardini in the present case. Because we construe §§ 52-57 (a) and 52-63 (b) to permit constructive service on the commissioner where reasonable efforts to make personal or abode service have failed, we reject the *Moses* holding insofar as it limits use of the provisions of § 52-63 (b) to situations where "(1) the officer [is] unable to obtain sufficient access into the structure to make proper service, (2) the defendant no longer reside[s] at the address or [makes it his]

abode, or (3) no such address exist[s]." (Internal quotation marks omitted.) Id., 458.

Pursuant to Practice Book § 10-31, the motion to dismiss was supported by affidavits submitted by the defendants. In opposition to the defendants' motion to dismiss, the plaintiffs submitted the return and an affidavit from Nardini. The marshal's return indicated that pursuant to § 52-63 (b), he served both defendants by leaving "a true and attested copy of the original writ, summons and complaint along with an affidavit of diligent search, with my doings thereon endorsed . . . at the office of the Motor Vehicle Commissioner." He also reported in his return that he had mailed each defendant a copy of the writ, summons and complaint. Both defendants attested that they had lived at 24 Rustic Lane in Madison for over twenty years, were in residence in October, 2001, and never were served in hand with a copy of the complaint nor was the summons and complaint left at their Rustic Lane home.

Nardini could have remained at the defendants' home to verify if the address was in fact the defendants' dwelling. The service of process entrusted to him never would have occurred if the defendants were not there to accept service personally or if verification of their abode was not accomplished. His remaining at the defendants' home under such a scenario could have no practical effect. He also could have continued other attempts to verify whether it was the defendants' usual place of abode. Such an exhaustive procedure might well have proved that the service authorized was physically or absolutely impossible, but Nardini still would be left in the position where the process had not been served. While impossibility would have been established in such a scenario, the writ of summons and complaint never would have been served properly. Nardini's use of § 52-63 (b) allowed the defendants to obtain service in a timely manner consistent with our statutes,

thereby attaining the goal of effective service that the statute intended.

When effecting abode service, a marshal or constable cannot guess that a particular dwelling is a defendant's usual place of abode because there must be an attestation of that fact in his return. The fact that the Rustic Lane address was the last address on file with the commissioner, in and of itself, could not establish that it was the defendants' usual place of abode. Despite attempts to confirm that address as the defendants' usual place of abode, Nardini was unsuccessful.

We conclude that Nardini's return and affidavit established that there was little likelihood that he would have been able to accomplish either personal service or abode service within the time he had to accomplish service, having made several fruitless prior attempts. We therefore conclude that this was the kind of situation that the legislature envisioned when it enacted provisions allowing for service on the commissioner when service by usual methods is impossible.

We therefore conclude that "impossibility," as used in § 52-63 (b), does not require that absolute physical impossibility exists but includes factual situations akin to the one presented by the present case where several unsuccessful attempts to serve or to verify the defendants' usual abode revealed that there was little likelihood of successful in hand or abode service.

The judgment is reversed and the case is remanded for further proceedings in accordance with the law.

In this opinion the other judges concurred.