MICHAEL G. PAGETT *v.* WESTPORT PRECISION, INC.
(AC 23304)

Flynn, McLachlan and Hennessy, Js.

Argued January 13—officially released April 20, 2004

*Paul L. McCullough*, for the appellant-appellee (defendant).

*Jonathan D. Elliott*, with whom, on the brief, was *Sabato P. Fiano*, for the appellee-appellant (plaintiff).

*Opinion*

FLYNN, J. The defendant, Westport Precision, Inc., appeals from the judgment of the trial court ordering the issuance of a writ of mandamus to the plaintiff, Michael G. Pagett, pursuant to General Statutes § 33-946 (b) and (c). The order required the defendant to allow the plaintiff, a minority shareholder who was a former employee currently engaged in litigation against the defendant, to inspect and to copy certain corporate financial records and tax returns. On appeal, the defendant argues that the court improperly granted the writ of mandamus after incorrectly finding that the plaintiff (1) had established that his demand was made in good faith and for a proper purpose, (2) had stated his purpose with reasonable particularity and (3) had proven that the records requested were directly connected with his purpose.

On cross appeal, the plaintiff appeals from the judgment denying him attorney's fees pursuant to General Statutes § 33-948 (c). The plaintiff argues that the court improperly denied his petition because there was no evidence that the defendant had a good faith reason for denying the plaintiff access to the requested records.

We affirm the court's granting of the writ of mandamus because we have determined that the plaintiff met the requirements of § 33-946 (b) and (c). We reverse the court's ruling on the plaintiff's cross appeal regarding attorney's fees and remand the matter to the court with direction to award attorney's fees to the plaintiff.

I

We first address the issue of whether the writ of mandamus was properly granted. The defendant claims that the plaintiff did not meet the requirements of § 33-946 (c), namely, that the plaintiff (1) had not established that his demand was made in good faith and for a proper purpose, (2) had not stated his purpose with reasonable particularity and (3) failed to prove that the records requested were directly connected with his purpose.

"When the factual basis of the court's decision is challenged, [we] must determine whether the facts are supported by the evidence or whether they are clearly erroneous. . . . In such cases, the trier's determination of fact will be disturbed only in the clearest of circumstances, where its conclusion could not reasonably be reached." (Internal quotation marks omitted.) *McManus* v. *Roggi*, 78 Conn. App. 288, 294, 826 A.2d 1275 (2003).

The defendant's claims turn in part on our construction of § 33-946 (b) and (c). "Issues of statutory construction raise questions of law, over which we exercise plenary review." *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 588, 830 A.2d 164 (2003). "When

we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law. . . . [I]n the absence of guidance from the language of the statute or the legislative history, we look to common law principles . . . . It is assumed that all legislation is interpreted in light of the common law at the time of enactment. . . .

"We construe each sentence, clause or phrase to have a purpose behind it. . . . In addition, we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended. . . . No word or phrase in a statute is to be rendered mere surplusage. . . . In applying those principles, we keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result. . . . In construing a statute that is remedial, we do so liberally in favor of those whom the legislature intended to benefit." (Citations omitted; internal quotation marks omitted.) *Hibner* v. *Bruening*, 78 Conn. App. 456, 458–59, 828 A.2d 150 (2003).

We first look to the words of the statute. Section 33-946 (b) provides in relevant part: "A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified

by the corporation, any of the following records of the corporation if the shareholder meets the requirements of subsection (c) of this section and gives the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy . . . ." Subsection (b) lists, inter alia, "accounting records" among the type of records that may be inspected. General Statutes § 33-946 (b).

The plain meaning of what, when and where records may be inspected is clear from the statutory language. Five days after filing a written request, at a place the corporation designates, a shareholder is entitled to inspect accounting records. The plain and ordinary meaning of these terms is clear, and the parties have not disputed their meaning.

Subsection (b) conditions this entitlement to inspection on meeting "the requirements of subsection (c) of this section . . . ." General Statutes § 33-946 (b). The parties disagree as to whether the plaintiff met the requirements of subsection (c). Section 33-946 (c) provides that "[a] shareholder may inspect and copy the records described in subsection (b) of this section only if: (1) His demand is made in good faith and for a proper purpose; (2) he describes with reasonable particularity his purpose and the records he desires to inspect; and (3) the records are directly connected with his purpose." When, as in this case, a shareholder believes that he meets this test and wrongly has been denied access to corporation documents, he may apply to the Superior Court for a writ of mandamus. See *MMI Investments, LLC* v. *Eastern Co.*, 45 Conn. Sup. 101, 108, 701 A.2d 50 (1996).

The defendant challenges whether the plaintiff has met these three statutory prongs. No statutory definition of the required "good faith," "proper purpose," "reasonable particularity" in the description of that pur-

pose or "direct connection" with that purpose is incorporated within the language of § 33-946 (c). Nor is the meaning plainly evident from the language used. Nor has our Supreme Court or this court previously construed these terms.

In construing this language, we consider the statute's remedial purpose and give it a liberal construction. See *Hibner* v. *Bruening,* supra, 78 Conn. App. 459. Statutes providing for inspection by shareholders should be liberally construed in favor of shareholders. See *Dines* v. *Harris,* 88 Colo. 22, 34, 291 P. 1024 (1930).[1]

We are persuaded by authority from sister states that have construed similar statutes and concluded that a shareholder's status as an owner is the spring from which statutory inspection rights flow. "The basis of a shareholder's right to inspect the books and records of a corporation is his ownership of the corporate property and assets through his ownership of shares; as an owner, he has the right to inform himself as to the management of the corporate property by directors and officers who are his trustees in direct charge of the property." *Tucson Gas & Electric Co.* v. *Schantz,* 5 Ariz. App. 511, 513, 428 P.2d 686 (1967). A corporation is not an entity that can be separated from its members, for in reality those running the corporation "are merely the agents of the [shareholders] . . . ." *Cooke* v. *Outland,* 265 N.C. 601, 610, 144 S.E.2d 835 (1965); see also *Bank of Giles County* v. *Mason,* 199 Va. 176, 181, 98 S.E.2d 905 (1957). Furthermore, "[a shareholder] in a corporation has, in the very nature of things and upon principles

---

[1] Arizona, Arkansas, Florida, Idaho, Indiana, Kentucky, Massachusetts, Mississippi, Montana, North Carolina, South Carolina, Virginia, and Wyoming all have statutory provisions similar to Connecticut's, and all are based on the Model Business Corporation Act. See 4 Model Business Corporation Act Annotated (American Bar Association 3d Ed. 2000/2001/2002 Sup.) § 16.02, p. 16-20. Their interpretations of the right and purpose of such an inspection illuminate our inquiry.

of equity, good faith, and fair dealing, the right to know how the affairs of the company are conducted and whether the capital of which he has contributed a share is being prudently and profitably employed." (Internal quotation marks omitted.) *State ex rel. Fussell* v. *McLendon*, 109 So. 2d 783, 786 (Fla. App. 1959).

## A

Section 33-946 (c) requires that a shareholder's demand to inspect and to copy the records must be made in good faith and for a proper purpose. We first turn to the defendant's contention that the court incorrectly found that this requirement had been met. We disagree.

Our case law has defined good faith in other contexts and circumstances. Good faith has been defined as honesty of purpose, lack of intent to defraud and honest intent to refrain from taking unconscientious advantage of another. *Snyder* v. *Reshenk*, 131 Conn. 252, 257, 38 A.2d 803 (1944). Applying this definition to the record before us, we conclude that the court's implicit finding of good faith was not clearly erroneous.

Section 33-946 (c) does not define what is meant by "proper purpose." At common law, a proper purpose has been held to be a purpose that is "for a lawful and reasonable purpose germane to [the plaintiff's] status as a shareholder . . . ." (Internal quotation marks omitted.) *Cooke* v. *Outland*, supra, 265 N.C. 614. A purpose will be found to be improper if it is "for speculative or trading purposes or for any purpose inimical to the interest of the corporation or of its shareholders." (Internal quotation marks omitted.) *MMI Investments, LLC* v. *Eastern Co.*, supra, 45 Conn. Sup. 109; see P. Karpel, "Corporations—Shareholders' Right to Inspect Stock List—What Constitutes Proper Purpose: *DeRosa* v. *Terry Steam Turbine Company*, 26 Conn. Supp. 131, 214 A.2d 684 (Super. Ct. 1965)," 40 Conn. B.J. 513, ·

513–21 (1966). The court found that the plaintiff had "described his purpose with reasonable particularity" after finding that he was a 20 percent shareholder who had been prevented from having certain knowledge that he was entitled to have.

The Model Business Corporation Act (model act) includes a detailed provision with respect to the right of shareholders to inspect the relevant corporate books of records and accounts and sheds light on our analysis.[2] Section 33-946 (c) of our shareholder inspection statute follows the language of § 16.02 (c) of the model act. The model act reads: "(c) A shareholder may inspect and copy the records described in subsection (b) only if: (1) his demand is made in good faith and for a proper purpose; (2) he describes with reasonable particularity his purpose and the records he desires to inspect; and (3) the records are directly connected with his purpose." Model Business Corporation Act (American Bar Association 2002) § 16.02 (c).

The official comment to the model act, regarding § 16.02 (b) and (c), provides in relevant part: "A proper purpose means a purpose that is reasonably relevant to the demanding shareholder's interest as a shareholder. Some statutes do not use the phrase 'proper purpose'; the Model Act continues to use it because it is traditional and well understood language defining the scope of the shareholder's right of inspection and its use ensures that the very substantial case law that has developed under it will continue to be applicable under the revised Act. As a practical matter, a shareholder who alleges a purpose in general terms, such as a desire to determine the value of his shares, to communicate with fellow shareholders, or to determine whether improper trans-

---

[2] Material regarding a shareholder's right to inspect or copy corporate business records, formerly found in § 52 of the Model Business Corporation Act, is now found in § 16.02 of the Revised Model Business Corporation Act.

actions have occurred, has been held to allege a proper purpose." (Internal quotation marks omitted.) Id., p. 16–19.

In this case, the plaintiff was a 20 percent minority shareholder in a closely held corporation. He testified that he did not have any documents in his possession that would have permitted him to value his shares and had not received any financial documentation since the termination of his employment with the defendant. By letter dated November 24, 2000, the plaintiff requested three categories of financial records. First, "[a]ll annual or quarterly financial statements of [the defendant] for the years in which I have been a shareholder of the corporation (1995 through the present)." Second, "[a]ll state and federal income tax returns of [the defendant], including all subparts thereof, for the years 1995 though the present." Third, "[a]ll accounting records of [the defendant] for the years 1995 through the present, including but not limited to all ledgers, balance sheets, profit/loss statements, revenue statements, corporate bank account statements, or other recordings or entries concerning any distributions or payments of any manner of corporate monies." The plaintiff affirmed at trial that his request was made in an effort to apprise himself properly of the value of his shares in the corporation through information regarding the financial management and standing of the defendant.

Joseph T. Greco, the defendant's president and majority shareholder, denied the plaintiff's first request by letter because of pending litigation between the defendant and the plaintiff. That denial prompted another written demand by the plaintiff through his attorney. The defendant again denied inspection and copying rights through a letter from its attorney. However, it did supply a certificate of incorporation, a document containing the names and addresses of the defendant's

officers and directors and two balance sheets prepared by its accountant for the years 1998-1999 and 1999-2000.

Because we have never decided if valuing stock is a proper purpose under § 33-946 (c), it is helpful to our analysis to review the determinations of other jurisdictions. The Supreme Court of Vermont interpreted an inspection statute similar to Connecticut's and held that a "proper purpose" justifying a shareholder's statutory right to inspect records must be reasonably relevant to one's interests as a shareholder and may include the valuation of shares, ascertaining the possibility of mismanagement and determining the performance and condition of the company. See *Towle* v. *Robinson Springs Corp.*, 168 Vt. 226, 228, 719 A.2d 880 (1998). The Illinois Appellate Court, interpreting § 45 of the Business Corporation Act, which provides that a shareholder has a right to inspect "for a proper purpose," held that a need to value stock arises when there is no ready market, such as when the stock is of a closely held corporation. *Winger* v. *Richards-Wilcox Mfg. Co.*, 33 Ill. App. 2d 115, 126–127, 178 N.E.2d 659 (1961). One of the most difficult determinations of stock value is for stock in which there is little or no public market, especially when the value of a closely held corporation is being endangered because of a dispute among its owners. See 2 Am. Jur. 2d Proof of Facts § 1 (1974).

The defendant does not dispute that valuing stock is a proper purpose. At oral argument, the defendant argued that a proper purpose is a multilayered concept, and, thus, the plaintiff must state a reason why he wants to value his stock. We do not agree with this interpretation.

If a stated purpose is not unreasonable or improper on its face, a corporation is not justified in refusing the request for inspection. *Lake* v. *Buckeye Steel Castings Co.*, 2 Ohio St. 2d 101, 105, 206 N.E.2d 566 (1965). Furthermore, if the primary purpose is reasonably related

to the individual's status as a shareholder, a single valid purpose is sufficient to satisfy a statutory requirement of a proper purpose. *CM & M Group, Inc.* v. *Carroll*, 453 A.2d 788, 792 (Del. 1982); *Weigel* v. *O'Connor*, 57 Ill. App. 3d 1017, 1027, 373 N.E.2d 421 (1978); see also *Thomas & Betts Corp.* v. *Leviton Mfg. Co.*, 681 A.2d 1026, 1034–35 (Del. 1996) (although plaintiffs were motivated by improper purpose of gaining leverage in acquiring defendant corporation and court denied inspection as to two other purposes, limited inspection for purpose of valuing its shares was proper).[3]

Section 33-946 (c) provides that the shareholder's demand must be "made in good faith and for a proper purpose . . . ." Because we conclude that valuing stock in this particular situation is a proper purpose, the shareholder does not have to state further the reason why he wants to value his stock.

"The purpose of [a statute such as this], like that of the common law right, is to protect small and minority shareholders against the mismanagement and faithlessness of their agents and officers, by furnishing the mode and opportunity to ascertain, establish, and maintain their rights." *In re Bank of Heflin* v. *Miles*, 294 Ala. 462, 466, 318 So. 2d 697 (1975). In light of the defendant's sale of its assets at the time of trial and the fact that this is a closely held corporation in which it would be difficult to determine stock value, it is logical that a shareholder would desire to inspect the defendant's records to determine the value of his stock. The plaintiff claimed that he was fired from an executive position for complaining about smoking in the workplace, but

---

[3] Although Delaware's inspection statute was not based on the Model Business Corporation Act, it does contain similar language regarding the requirement of a proper purpose, and these cases are cited in the model act's annotation. See Del. Code Ann. tit. 8, § 220 (2001); 4 Model Business Corporation Act Annotated (American Bar Association 3d Ed. 2000/2001/2002 Sup.) § 16.02, pp. 16-37, 16-42.

the defendant claimed that he was fired for self-dealing in the products of the defendant to its disadvantage. Although the parties are involved in separate litigation, each against the other, there is no evidence of a bad faith reason underlying the plaintiff's request for this financial documentation. Therefore, the court's implicit finding that the plaintiff had made his request in good faith and its express finding that it was for a proper purpose were not clearly erroneous.

B

Section 33-946 (c) also requires that a shareholder must both state his purpose and describe the documents requested with reasonable particularity. The parties are not in dispute about whether the plaintiff sufficiently particularized which records he sought to inspect, but they do contest whether the purpose was sufficiently detailed. We have never defined reasonable particularity in a situation such as this and look to how other jurisdictions have interpreted statutory language similar to that of § 33-946 (b) and (c). In *Parsons* v. *Jefferson-Pilot Corp.*, 333 N.C. 420, 429, 426 S.E.2d 685 (1993), the North Carolina Supreme Court held that "[w]hether a shareholder has described his purpose or the desired records with reasonable particularity necessarily depends upon the facts and circumstances of each case."

"[I]n the absence of . . . statutory . . . guidance, [the court] may appropriately look to the meaning of the [word] as commonly expressed in the law and in dictionaries." (Internal quotation marks omitted.) *Hibner* v. *Bruening*, supra, 78 Conn. App. 460–61. "Particularity" is defined in pertinent part as "a minute detail," "an individual characteristic," "the quality or state of being particular as distinguished from universal" and "attentiveness to detail." Webster's Ninth New Collegiate Dictionary (1988). Because "particularity" is

modified by the adjective "reasonable," we conclude that the particularity requirement directs a shareholder to express his purpose with sufficient particularity so that the reason for the inspection can be ascertained by the corporation, but that minute detail of purpose is not required.

In this case, the plaintiff stated that his purpose "was to inform [the plaintiff] of the financial management and standing of [the defendant] so that he could be properly apprised of the value of his shares in the corporation." A person of ordinary intelligence could understand the plaintiff's purpose in requesting access to the financial documents. See *Parsons* v. *Jefferson-Pilot Corp.*, supra, 333 N.C. 429. Therefore, both parties reasonably could have understood that the plaintiff's purpose was to determine the value of his shares. The court had before it testimony and evidence that following the termination of the plaintiff's employment, no information regarding the defendant's operations was given to the plaintiff until he requested access to the defendant's financial documents and was denied access, but thereafter was presented with a certificate of incorporation, a document containing the names and addresses of the defendant's officers and directors and two balance sheets prepared by its accountant for the years 1998-1999 and 1999-2000. The corporation was not publicly-held, but rather closely held. Unlike shareholders of a public corporation who receive annual reports of the corporation's financial condition, the plaintiff had no such information, and the particular request he made had been denied. As the plaintiff stated his purpose with reasonable particularity, the court properly determined that this requirement was met.

## C

The defendant next argues that the court improperly found that the plaintiff had established that the records

requested were directly connected with his purpose. We do not agree. The court found that it was a "proper way" and "partial way," if not the "total way," to get the information needed.

The plaintiff's application for a writ of mandamus requested that he be given the right to inspect all state and federal income tax returns of the defendant and all accounting records from 1995 through the present, including, but not limited to all ledgers, balance sheets, profit-loss statements, revenue statements, corporate bank account statements or other recordings or entries concerning any distributions or payments of any manner of corporate moneys.

Floyd Ozeck, the defendant's accountant, testified that the balance sheets that were given to the plaintiff did not include all the information that was needed to value the company. He also stated that an accountant would have to analyze the cash receipts and disbursements of the company, payroll records, purchase journals, accounts payable and accounts receivable, all of which were documents that the plaintiff requested, in order to evaluate the company upon a sale.

Ozeck's testimony justified the court's finding that the plaintiff had shown a correlation between the valuing of his stock and the documents he had requested. In fact, Ozeck testified that to value stock of a closely held corporation, there must be an appraisal done of the value of the company, especially if there was a contemplated sale of the corporation. An appraiser would have to analyze the same documents that the plaintiff had requested. Therefore, the court's finding that the plaintiff established that the documents he had requested were directly related to his purpose of valuing his stock was not clearly erroneous. Because we conclude that the defendant has not shown that the court made any improper findings and the plaintiff met the requirements

of § 33-946, we affirm the court's granting of the writ of mandamus.

## II

We next turn to the plaintiff's cross appeal. The plaintiff appeals from the court's finding that he was not entitled to payment of attorney's fees pursuant to § 33-948 (c). He argues that the court improperly denied his petition because there was no evidence that the defendant had a good faith reason for depriving the plaintiff access to the requested records. We agree.

The plaintiff's claim is essentially that the court's finding was clearly erroneous because of insufficient evidence. A court's finding is clearly erroneous "when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Ress* v. *Suffield*, 80 Conn. App. 630, 632, 836 A.2d 475 (2003), cert. denied, 267 Conn. 920, 841 A.2d 1191 (2004).

When explaining the reason for its denial, the court stated: "I'm not going to order attorney's fees. I think this situation is very much like a divorce situation. I don't believe in attorney's fees in these kinds of cases, unless somebody really does not comply." We do not see a similarity between attorney's fees in a divorce case and the statutory right to attorney's fees given in § 33-948 (c).

General Statutes § 46b-62 governs the award of attorney's fees in dissolution proceedings and provides in relevant part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to th[is] rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine [the court's] prior financial orders. . . . Whether to allow counsel fees . . . and if so in what amount, calls for the exercise of judicial discretion." (Internal quotation marks omitted.) *Bee* v. *Bee*, 79 Conn. App. 783, 791, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003).

In contrast, § 33-948 (c) provides: "If the court orders inspection and copying of the records demanded, it *shall* also order the corporation to pay the shareholder's costs, including reasonable attorney's fees, incurred to obtain the order unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded." (Emphasis added.) This statute does not contain the same monetary limitations and discretionary standard as does the award of attorney's fees in divorce cases. In light of the statute, a court cannot refuse to award attorney's fees in all such cases. The court does not have the discretion to deny fees simply because the court does not believe they are ever warranted in this type of statutory action.

The defendant contends that the court properly denied the plaintiff's application for attorney's fees because it made a finding that the records were withheld in good faith and that, in denying access, the defendant was relying on the advice of its attorney, Paul L.

McCullough, and the opinion of its accountant, Ozeck. The record does not support such a finding.

When asked whether it was making a finding that the records were withheld in good faith, the court stated: "I make that finding, and it's based on this. . . . I believe it was Mr. McCullough who told him, the defendant, that he could indeed do that. What he showed him, indeed, from the accountant was enough, and, secondly, that . . . the accountant's testimony was not as black and white as I thought. . . . I do think Mr. McCullough pointed out where, you know, it could have been—you know, you could go either way on it, I guess. I'm holding in your favor for the record."

The record contains no evidence or testimony indicating that the defendant corporation or any particular officers acting on its behalf were relying on the advice of counsel or its accountant. Although Ozeck testified that he would not give financial information to a minority shareholder without the permission of the defendant's director, he never stated that he knew of the plaintiff's request for documentation or that he had advised the defendant concerning the denial of access to this information. In fact, Ozeck stated that he had possessed no knowledge of the plaintiff's request. The defendant does not direct us to anything in the record that would support an inference that advice from Ozeck could have led to a good faith denial of the plaintiff's request for access to the disputed financial records.

As to the advice of counsel, the defendant argues that the fact that one of its letters denying the plaintiff's request was on the letterhead of its outside counsel, supports an inference that the defendant was relying on the advice of counsel. We are not persuaded. First, the letter expressly stated that the information contained therein was the position of the defendant and did not indicate what advice, if any, was provided by

the defendant's counsel. Second, the court's statements illustrate that the letter did not play a role in its decision. The court stated that its finding was based on statements that McCullough had made to the defendant. McCullough was the attorney who tried the case. He never testified, and there was no testimony or evidence presented regarding any conversations that he might have had with the defendant or its officers or employees. Therefore, there is insufficient evidence to uphold the court's finding of good faith.

On the defendant's appeal, the judgment is affirmed. On the plaintiff's cross appeal, the judgment is reversed as to the denial of the plaintiff's application for attorney's fees, and the case is remanded for further proceedings to determine the amount of reasonable attorney's fees to be paid to the plaintiff.

In this opinion the other judges concurred.