FINE HOMEBUILDERS, INC. *v.* DIANE
PERRONE ET AL.
(AC 26714)

Bishop, McLachlan and Rogers, Js.

Argued September 19—officially released December 26, 2006

*Jeffrey M. Sklarz*, for the appellant (plaintiff).

*Stephen A. Finn*, with whom, on the brief, was *Alex K. Sherman*, for the appellees (named defendant et al.).

*Opinion*

BISHOP, J. The plaintiff, Fine Homebuilders, Inc., appeals from the judgment of the trial court dismissing its complaint against the defendants Diane Perrone and

Richard Perrone[1] on the basis that the court lacked personal jurisdiction over the defendants due to insufficient service of process. We reverse the judgment of the trial court.

This case arises out of an action to foreclose a mechanic's lien and for breach of contract. On September 14, 2004, state marshal Siegrun G. Pottgen purported to serve the defendants by leaving the writ of summons, complaint and notice of lis pendens at their residence, "Villa Aquaria," in Darien. The defendants' home is a gated compound consisting of a main house and one or more outbuildings. Public access to the property is guarded by a front gate, which runs completely across the driveway, a fence, which partially surrounds the grounds, and shrubbery and trees. The house is more than 200 feet from the front gate. When Pottgen arrived to serve the papers at approximately 1 p.m., she found the gate locked. There is a call box to the left of the gate, which Pottgen used in an attempt to contact the defendants, but there was no response. Pottgen left the property and returned between 3 p.m. and 3:30 p.m. Again, there was no response. Pottgen returned once again between 5 p.m. and 5:30 p.m. The gate remained locked, and, again, there was no response to her calls from the call box. Confronted with the locked gate blocking the principal avenue of ingress to the property, Pottgen affixed the process to the gate.[2] The defendants received the process on September 16, 2004.

The defendants moved to dismiss the action on the ground that the court lacked jurisdiction over them due

---

[1] Also named as defendants were Washington Mutual Bank, F.A., Barrington Bogle Plastering Services and Webster Bank. Because none of those defendants is a party to the appeal, we refer in this opinion to the Perrones as the defendants.

[2] At the hearing on the motion to dismiss, Pottgen testified that she placed the papers in a plastic bag and secured the bag to the gate with two rubber bands. Richard Perrone testified that the papers were merely lodged in the gate and that there was no protective plastic wrap around them.

to insufficient service of process. After an evidentiary hearing, the court found that leaving the writ of summons and complaint and notice of lis pendens in a gate more than 200 feet from the defendants' home was not reliable service. This appeal followed.

We begin by setting forth our standard of review. "A challenge to the jurisdiction of the court presents a question of law. . . . Our review of the court's legal conclusion is, therefore, plenary." (Internal quotation marks omitted.) *Bove* v. *Bove*, 93 Conn. App. 76, 81, 888 A.2d 123, cert. denied, 277 Conn. 919, 895 A.2d 788 (2006).

"In many cases jurisdiction is immediately evident, as where the sheriff's return shows abode service in Connecticut. . . . When, however, the defendant is a resident of Connecticut who claims that no valid abode service has been made upon her that would give the court jurisdiction over her person, the defendant bears the burden of disproving personal jurisdiction. The general rule putting the burden of proof on the defendant as to jurisdictional issues raised is based on the presumption of the truth of the matters stated in the officer's return. When jurisdiction is based on personal or abode service, the matters stated in the return, if true, confer jurisdiction unless sufficient evidence is introduced to prove otherwise." (Internal quotation marks omitted.) *Tax Collector* v. *Stettinger*, 79 Conn. App. 823, 825, 832 A.2d 75 (2003).

The manner in which service of process may be effected is determined by statute and by our decisional law interpreting the relevant statute. Therefore, we begin our analysis with the statute. General Statutes § 52-57 (a) provides: "Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place

of abode, in this state." We note that the statute contains no definition of the term "abode." Thus, we do not know from the statute's language whether the term "abode" is intended narrowly to mean the dwelling house or more broadly to encompass the entirety of the property associated with a dwelling house.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 534–35, 902 A.2d 1058 (2006). "We construe each sentence, clause or phrase to have a purpose behind it. . . . In addition, we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended. . . . No word or phrase in a statute is to be rendered mere surplusage. . . . In applying those principles, we keep in mind that the legislature is presumed to have intended a reasonable, just and constitutional result." (Citation omitted; internal quotation marks omitted.) *Hibner* v. *Bruening*, 78 Conn. App. 456, 459, 828 A.2d 150 (2003). "If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute

is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Internal quotation marks omitted.) *State* v. *Tabone*, supra, 535.

A review of the legislative history fails to shed any light on the meaning or import of the term "abode" or the phrase "at the usual place of abode." Some guidance is, however, provided by a review of the decisional law regarding the purpose of § 52-57 (a). Our Supreme Court has determined that the purpose of abode service is to afford a defendant actual notice of a pending action. "Abode service is only a step removed from manual service and serves the same dual function of conferring jurisdiction and giving notice. . . . Its chief purpose is to ensure actual notice to the defendant that the action is pending." (Citation omitted.) *Smith* v. *Smith*, 150 Conn. 15, 20, 183 A.2d 848 (1962). Accordingly, in order to effectuate abode service, "[t]he process must be left at the usual place of abode of the defendant in such a place and in such a manner that is reasonably probable the defendant will receive the notice of the action against him." *Pozzi* v. *Harney*, 24 Conn. Sup. 488, 491, 194 A.2d 714 (1963). Thus, whether the term "abode" connotes one's dwelling or more broadly one's property, we know that service must be effectuated in a way reasonably calculated to provide actual notice. Here, the defendants claim that service of process at a gate more than 200 feet from their house was insufficient as a matter of law because such service could not be construed as reasonably calculated to provide actual notice to them. We do not agree.

We begin our assessment with the word "abode" to determine whether the word narrowly means one's

dwelling or whether it more broadly encompasses one's property. Although the statute at hand contains no internal definitions, our review of the General Statutes yields two instances in which the term "abode" is utilized and has been construed in a manner relevant to our inquiry. General Statutes § 53-206 provides in relevant part: "(a) Any person who carries upon his or her person. . . any knife the edged portion of the blade of which is four inches or over in length . . . shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . . (b) The provisions of this section shall not apply to . . . any person who is found with any such knife concealed upon one's person while lawfully removing such person's household goods or effects from one place to another, or from one residence to another . . . any person while actually and peaceably engaged in carrying any such knife from *such person's place of abode* or business to a place or person where or by whom such knife is to be repaired, or while actually and peaceably returning to such person's place of abode or business with such knife . . . ." (Emphasis added.)

In *State* v. *Sealy*, 208 Conn. 689, 690, 546 A.2d 271 (1988), the defendant had been convicted of carrying a dangerous weapon in violation of § 53-206 (a). The defendant had left his third floor apartment and confronted a police officer in the hall and stairway adjacent to the apartment. Id., 691. On this basis, the defendant claimed that he was in his abode and, thus, by the terms of § 53-206 (a), entitled to be in possession of the knife he wielded. Id., 692–93. In assessing this claim, our Supreme Court looked not to whether the defendant had been within the confines of his apartment when in possession of the knife, but rather whether he was entitled to exercise exclusive control over the hall and stairway. The court opined: "In this case the defendant did not have the exclusive use of the area between the

second and third floor apartments, as he did not have the legal right to control access and to exclude others. At any time there might be deliverypersons, the landlord, his or her agents, visitors, or residents of the other apartment in that common hallway and the defendant could not lawfully have excluded them from the premises. . . . In other words, although the defendant may have been the principal user of the third floor landing and stairway, other individuals, however infrequent their use, also had a right to use that area. . . . This being the case, we conclude that the stairway and landing which led to the defendant's apartment were not part of his residence or abode. Therefore, the trial court did not err in instructing the jury that § 53-206 (a) would be violated if the defendant was carrying the knife in a common hallway." (Citation omitted.) Id., 694.

From *Sealy*, we glean that in the context of a penal statute, the term abode connotes more than one's dwelling and may also encompass an area outside of the dwelling that is within the person's exclusive control. Because in *Sealy* the hall and stairways outside the defendant's apartment were not within his exclusive possession and control, they were not part of his abode. By inference, if the hallway or stairwell had been within the defendant's exclusive possession and control, those areas would have been construed as part of his abode.

Elsewhere, in the workers' compensation context, the General Assembly has employed the term abode to connote more than one's dwelling itself. General Statutes § 31-275 sets forth the workers' compensation scheme for police officers and firefighters who are injured in the course of employment. The statute's definition of the term "in the course of employment" is instructive. In pertinent part, the statute provides: "For a police officer or firefighter, 'in the course of his employment' encompasses such individual's departure from such individual's place of abode to duty, such

individual's duty, and the return to such individual's place of abode after duty . . . ." General Statutes § 31-275 (1) (A) (i). Thus, a police officer or firefighter injured while traveling to or from his or her abode while in the course of employment may be entitled to workers' compensation benefits. Subparagraph (E) of subdivision (1), however, provides in relevant part: "A personal injury shall not be deemed to arise out of the employment if the injury is sustained: (i) At the employee's place of abode . . . ." General Statutes § 31-275 (1) (E). Unlike § 52-57, the statute at hand, the legislature in § 31-275 also provided a definition of the term "abode." The statute provides in relevant part: "For purposes of subparagraph (E) of this subdivision, 'place of abode' includes the inside of the residential structure, the garage, the common hallways, stairways, driveways, walkways and the yard . . . ." General Statutes § 31-275 (1) (F).

We believe the broad application of the term "abode" as used in the workers' compensation statute is equally applicable to the statute at hand regarding service of process. Although a workers' compensation statute, as remedial, should be broadly construed, so, too, should we read a statute regarding jurisdiction broadly, consistent with our policy to assert jurisdiction when it is reasonable to do so. "Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court." (Internal quotation marks omitted.) *Mulcahy* v. *Mossa*, 89 Conn. App. 115, 129, 872 A.2d 453, cert. denied, 274 Conn. 917, 879 A.2d 894 (2005).

Although we recognize, as the defendants argue, that it may be common practice to slide process under a defendant's door, thereby placing it within the confines of the dwelling, § 52-57 (a) requires service "at [the] usual place of abode," not in the dwelling. In the context

of a gated single-family residence, where there is no access to the front door and no evidence that the process could have been slid under a door, interpreting § 52-57 (a) to require service at the dwelling itself would be particularly troubling, as such an interpretation could, as a practical matter, insulate defendants who live in gated single-family estates from abode service.[3]

The case at hand presents a difficult question because the main entryway to the property is guarded by a gate more than 200 feet from the house. As noted, the defendants reside on an estate to which public access to their front door is blocked by a gate, fence and shrubbery. Unable to reach the defendants' home, the marshal testified, she had no alternative but to leave the process at the front gate in order to effectuate abode service. If the locked front gate to an estate is not treated akin to a person's front door for the purposes of satisfying § 52-57 (a), state marshals could be required to scale fences, traverse brush or otherwise potentially trespass on a defendant's property or adjoining properties to obtain access to a home in order to effectuate abode service. Such absurd requirements cannot be in furtherance of the intent or purpose of § 52-57 (a).

In this case, it is significant, though not conclusive, that the defendants actually did receive the process, thereby accomplishing the purpose of abode service. Section 52-57 (a), authorizing abode service, should

---

[3] We note that this case is distinguishable from cases holding that process left in common areas of multifamily dwellings is insufficient. See *Cugno* v. *Kaelin*, 138 Conn. 341, 84 A.2d 576 (1951), overruled in part on other grounds by *Lampson Lumber Co.* v. *Hoer*, 139 Conn. 294, 300, 93 A.2d 143 (1952); *Clover* v. *Urban*, 108 Conn. 13, 142 A. 389 (1928). The rationale for the holdings in those cases stemmed from a desire to ensure that the proper party is served when process is deposited in a place commonly used by several people. When presented with a single-family residence, however, these historical concerns regarding the number of people who travel in common areas do not exist.

be construed liberally in cases in which the defendant received actual notice. *Krom* v. *Krom*, judicial district of Hartford, Docket No. FA-97-0714850 (January 6, 2003). Accordingly, in light of the fact that the front door of the defendants' home was inaccessible, that the marshal affixed the process to the main entryway to the property, that the property is a single-family residence and the defendants actually received notice of the action, we believe that the service of process effected by the marshal was reasonably likely to achieve personal notice. Therefore, the court improperly determined that it lacked personal jurisdiction over the defendants.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion ROGERS, J., concurred.

McLACHLAN, J., dissenting. The pivotal issue in this appeal is whether the lodging of process in a gate more than 200 feet[1] from the home of the defendants[2] constituted proper abode service pursuant to General Statutes § 52-57 (a). The majority concludes that leaving the process at the gate was effective abode service and was reasonably likely to achieve personal notice, and it reverses the judgment of the trial court. I disagree and respectfully dissent from the majority opinion.

"Proper service of process is not some mere technicality. Proper service of process gives a court power to render a judgment which will satisfy due process under the 14th amendment of the federal constitution and equivalent provisions of the Connecticut constitution and which will be entitled to recognition under the

---

[1] The state marshal who served the process testified that the house was approximately 300 feet from the gate. Richard Perrone testified that the house was approximately 400 feet from the gate.

[2] See footnote 1 of the majority opinion.

full faith and credit clause of the federal constitution." (Internal quotation marks omitted.) *Hibner* v. *Bruening*, 78 Conn. App. 456, 458, 828 A.2d 150 (2003). "It is black letter law that the Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction. . . .

"In *Collins* v. *Scholz*, 34 Conn. Sup. 501, 502, 373 A.2d 200 (1976), the Appellate Session of the Superior Court stated that [w]hether a particular place is the usual place of abode of a defendant is a question of fact. Although the sheriff's return is prima facie evidence of the facts stated therein, it may be contradicted and facts may be introduced to show otherwise." (Internal quotation marks omitted.) *Tax Collector* v. *Slettinger*, 79 Conn. App. 823, 825, 832 A.2d 75 (2003).

In this case, the defendants filed a motion to dismiss the action against them, claiming that the court lacked personal jurisdiction over them due to insufficient service of process. At the hearing on that motion, the state marshal testified that she attempted service three times during the afternoon of September 14, 2004. Each time, she found that the front gate across the driveway was locked and that no one responded to her calls from the call box located to the left of the gate. At that point, she affixed the process to the locked front gate.

During cross-examination, the marshal admitted that some of her statements in her sworn affidavit, submitted in opposition to the defendants' motion to dismiss, were inaccurate. For example, the defendants' property was not surrounded by a high gate, there were only two cars in the driveway when she attempted service, and there was no evidence to support her signed statement that she believed someone was at home and was attempting to evade service of process. The marshal

also testified that she (1) did not try to contact the defendants by telephone, (2) did not see anyone walking about the property, (3) did not telephone the attorney for the plaintiff, Fine Homebuilders, Inc., to inform him of the situation and (4) left no messages on the defendants' answering machine indicating that she left process at their home. According to the marshal's testimony, she wrapped the papers in a clear plastic wrapper and affixed the wrapper to the gate with rubber bands. Although she served process on the defendants on September 14, 2004, she admitted that she legally could have made service on September 15, 2004.

Richard Perrone also was a witness at the evidentiary hearing. He testified that he and his wife had been out of the country on September 14, 2004; they returned the evening of September 15, 2004. A copy of his passport with the stamped date of reentry to the United States was submitted into evidence. He further testified that (1) there had been only one car in their driveway while they were away, (2) he discovered the process in the gate on the morning of September 16, 2004, (3) the papers were rolled up in a bundle, without rubber bands or a plastic wrapper, and (4) the house is accessible by means other than the gate across the driveway.

At the conclusion of the evidence, the court gave counsel the opportunity to make closing arguments. During the exchange of comments among counsel and the court, the court made the following statements about the credibility of witnesses: "[L]et me just say this. I am a judge that you may find a little different. [Richard Perrone] seemed like an okay guy, a credible guy that went out of the country, that came back, and he sees some papers in his fence, and, you know, he gets them on [September 16]. I don't, you know, find his testimony to not be credible. On the other hand, the marshal, there is some—I am not saying that she is lying, no, but I don't know how persuasive, given

some of the issues that were brought out regarding the testimony."

The court obviously was troubled by the discrepancies in the marshal's affidavit. After further comments by counsel during the closing arguments, the court stated: "Do you want to address that because that bothers me. This isn't a situation where you have defendants that are refusing service. And if I look at the affidavit of the marshal, one of the reasons why she did what she did was because, you know, as she saw it, she couldn't get in. She couldn't get access. But another—if you look at the other part of her affidavit, another reason she says, and I mean, it says what the affidavit says; what it says, they were basically evading service. And that testimony—that testimony did not—and that evidence did not come out that way. That bothers me."

In its memorandum of decision issued June 24, 2005, the court did not mention the credibility of the witnesses. Nor did the court set forth any facts, other than the fact that the marshal left the process lodged in a gate located more than 200 feet from the defendants' home.[3] It concluded, however, that such service was not free from the vagaries of the elements and outside influences and was not likely to ensure notice to the defendants that the action was pending. It therefore concluded that, despite actual notice, the service was not proper abode service and was insufficient as a matter of law.

There is little Connecticut appellate case law to aid in the resolution of the issue on appeal. In *Clover* v. *Urban*, 108 Conn. 13, 142 A. 389 (1928), our Supreme

---

[3] The plaintiff filed a motion for articulation of the court's decision, requesting that the court apply the facts adduced at the hearing to the proper legal standard. After the court denied the motion, the plaintiff filed a motion for review with this court. We granted the motion but denied the relief sought therein.

Court stated that the chief purpose of making service of civil process at a defendant's usual place of abode is to "ensure actual notice to the defendant that the action is pending." Id., 16. Although the place of service in *Clover* was an apartment house, the court concluded that the defendant's place of abode "was not reached from the street until one came to the door which led into his own apartment." Id., 17. Similarly, in *Cugno* v. *Kaelin*, 138 Conn. 341, 84 A.2d 576 (1951), overruled in part on other grounds by *Lampson Lumber Co.* v. *Hoer*, 139 Conn. 294, 300, 93 A.2d 143 (1952), our Supreme Court noted that apartments in a particular building were as separate and distinct as though they were under different roofs and that the door of the apartment of each tenant would be his outer door. Service at an apartment other than the defendant's apartment, although located in the same building, was not proper abode service. Id., 343.

Even though *Clover* and *Cugno* addressed service of process at apartments, the common thread, i.e., service at a defendant's door, has carried through to the numerous Superior Court decisions considering the issue. See, e.g., *American Tax Funding, LLC* v. *LeBrun*, Superior Court, judicial district of Tolland, Docket No. CV-04-4000951-S (June 3, 2005) (39 Conn. L. Rptr. 446) (attaching process to exterior handle of locked screen door not proper abode service); *Fazzino* v. *Niemczak*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-04-0286989-S (May 6, 2004) (37 Conn. L. Rptr. 21) (lodging rolled legal notice to quit between doorknob of exterior door and exterior sidewall of door not proper abode service); *Ceci Bros. Inc.* v. *Five Twenty One Corp.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-96-0150073-S (May 17, 1996) (16 Conn. L. Rptr. 595) (affixing process to outside gate probably not sufficient for proper abode service under ordinary circumstances); *Evans* v.

*Evans*, Superior Court, judicial district of Middlesex, Docket No. 66311 (November 12, 1992) (7 C.S.C.R. 1312) (sufficient abode service requires that document be placed at least partially within the abode itself); *Pozzi* v. *Harney*, 24 Conn. Sup. 488, 491, 194 A.2d 714 (1963) (pinning, tying or otherwise attaching complaint to outside door generally not proper abode service). The exceptions to the general rule occur in cases in which the defendants are attempting to evade service of process. See, e.g., *Ceci Bros. Inc.* v. *Five Twenty One Corp.*, supra, 16 Conn. L. Rptr. 595; *Zingarelli* v. *Dinan*, Superior Court, judicial district of Fairfield, Docket No. CV-93-0309746-S (May 20, 1994) (9 C.S.C.R. 630).

The rationale behind the requirement of leaving the process inside the door, rather than attached to an exterior surface, is to make it reasonably probable that the defendant receives the notice of the action against him or her. As indicated in those cases, process, if left outside, is subject to a number of outside influences over which the party to be served has no control; such service is not free from "the vagaries of the elements . . . ." *Fazzino* v. *Niemczak*, supra, 37 Conn. L. Rptr. 21. The paper could be removed by any interested or curious individual or blown away by wind or storms. Because so many flyers and other unwanted advertisements often are attached to outside doorknobs or structures, the homeowner may simply discard it without giving the paper any serious attention. See *Sours* v. *State*, 172 Ohio St. 242, 245, 175 N.E.2d 77 (1961). In short, service of process in such a manner would be "so haphazard and uncertain as to fail to meet the requirements of [proper abode service]." *Balkun* v. *DeAnzona*, 5 Conn. Cir. Ct. 580, 582, 258 A.2d 482 (1969).

Because proper abode service is a question of fact, there may be occasions when affixing process to a gate would be appropriate under the circumstances. As previously noted, there may be an exception if the party

to receive process is attempting to avoid service. Here, there was nothing to suggest that the defendants were attempting to evade the marshal. Further, testimony at the hearing revealed that the marshal had done nothing more than use the call box near the locked gate at three separate times during the afternoon of September 14, 2004. By her own admission, she did not try to reach the defendants by telephone and did not leave a message that process had been lodged in their gate. She attempted service only on that one afternoon, even though service legally was not required to be made that day. Richard Perrone testified that he and his wife were out of the country on September 14, 2004. He also testified that access to the house was possible without using the entry gate. The court stated that it found Richard Perrone to be a credible witness.

The majority concludes that the service of process was reasonably likely to achieve personal notice because "the front door of the defendants' home was inaccessible . . . the marshal affixed the process to the main entryway of the property . . . and the defendants actually received notice of the action . . . ." It also reasons that state marshals should not have to "scale fences, traverse brush or otherwise potentially trespass on a defendant's property or adjoining properties to obtain access to a home in order to effectuate abode service." Significantly, the court did not find that the door to the defendants' home was inaccessible. Further, the fact that the defendants actually received notice is a factor to be considered, but it is not determinative. "If . . . substitute service is clearly insufficient as a matter of law, then actual notice does not necessarily save the service." (Internal quotation marks omitted.) *Tsukroff* v. *Fordham*, Superior Court, judicial district of Hartford-New Britain, Housing Session, Docket No. SPH 87791 (September 13, 1996) (18 Conn.

L. Rptr. 91); *United States Guarantee Co.* v. *Giarelli,* 14 Conn. Sup. 400 (1947).

With respect to any possible trespass by the state marshal to effectuate service, General Statutes § 6-38a (b) would bar liability. That subsection provides: "Any state marshal, shall, in the performance of execution or service of process functions, have the right of entry on private property and no such person shall be personally liable for damage or injury, not wanton, reckless or malicious, caused by the discharge of such functions."

For those reasons, the court reasonably could conclude, after hearing the testimony and reviewing the exhibits, that abode service was insufficient as a matter of law under the circumstances of this case.[4] I would affirm the judgment of the court granting the defendants' motion to dismiss. Accordingly, I respectfully dissent.

---

[4] Statutory provisions for substituted service are more liberal in some jurisdictions. In New York, process may be served on a person of suitable age and discretion at the actual dwelling place or usual place of abode of the person to be served. CPLR 308. Federal procedure allows service to be effected under certain circumstances by mail. Fed. R. Civ. P. 4 (d) (2). If public policy weighs in favor of allowing the lodging of process on a locked entry gate, it is within the province of the legislature to enact provisions in our statutes to expand the circumstances under which proper abode service can be made.