# HELEN ZIEGLER BENJAMIN, TRUSTEE *v.*
# ISLAND MANAGEMENT, LLC
# (SC 20501)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to the provision (§ 34-255i (b) (2)) of the Connecticut Uniform
Limited Liability Company Act describing the conditions under which
a member of a manager-managed limited liability company is permitted
to inspect the company's books and records, "a member may inspect
and copy full information regarding the activities, affairs, financial condi-
tion and other circumstances of the company as is just and reasonable
if . . . [t]he member seeks the information for a purpose reasonably
related to the member's interest as a member . . . the member makes a
demand in a record received by the company, describing with reasonable
particularity the information sought and the purpose for seeking the
information . . . and . . . the information sought is directly connected
to the member's purpose."

Benjamin *v.* Island Management, LLC

The defendant, a manager-managed limited liability company, appealed from
the judgment of the trial court, which determined that the defendant's
refusal to disclose certain information to the substitute plaintiffs, cotrus-
tees of a trust that was a member of the defendant, violated both § 34-
255i and the defendant's operating agreement. Z created trusts for the
benefit of each of his six adult children, including H, B, and C. These
trusts owned several family businesses from which Z's children received
dividend income. The defendant was created to oversee and build the
family's assets, and each of the children's trusts were members and
equal one-sixth owners of the defendant, which was governed by an
operating agreement executed by Z's children as trustees of their respec-
tive trusts. During the relevant time period, B and C served as both
comanagers and copresidents of the defendant, and they had significant
roles in family owned businesses from which the defendant received
income. Sometime after Z's death, a disagreement arose regarding the
amount of the annual distributions. H believed that the family businesses
should be making larger distributions to benefit present trust beneficiar-
ies, whereas others, including B and C, believed that the distribution
levels were satisfactory. H, in her capacity as cotrustee of her trust,
made a series of four written demands for inspection of the defendant's
books and records, each of which cited § 34-255i, or its predecessor,
as authority for the demand. The final demand, which requested twenty-
seven categories of information, stated that the purposes of the demand
were to determine the value of her trust's membership interest in the
defendant and to ascertain the condition and affairs of the family owned
businesses so that H's trust could exercise its rights as a member of
the defendant in an informed manner. The defendant produced many
records in response to each of the successive demands but declined to
produce others. H, in her capacity as trustee, thereafter sought to compel
the defendant to comply with her inspection demands, alleging that the
member trust's right to inspection under § 34-255i had been violated
and that the defendant's failure to comply with her inspection demands
constituted a breach of the defendant's operating agreement. Prior to
trial, the court granted a motion to substitute the successor trustees
of H's trust as the plaintiffs, and the defendant provided additional
information to the plaintiffs. By the time trial commenced, the plaintiffs
contended that the four remaining categories of information at issue
were the defendant's general ledger, information pertaining to the defen-
dant's management services agreements, information pertaining to the
compensation of the defendant's managers, officers, and employees,
and records showing payments made to third parties on behalf of H's
trust. The plaintiffs argued before the trial court that they were entitled
to inspect the remaining categories of information because the evidence
called into question whether manager and copresident compensation
for B and C was excessive, which, in turn, affected the fair value of the
defendant, and whether that compensation, if excessive, constituted a

341 Conn. 189     FEBRUARY, 2022     191

Benjamin *v.* Island Management, LLC

disguised distribution not made available to the other children or their respective member trusts. The trial court thereafter concluded that the plaintiffs had demonstrated that they were entitled to inspect each of the four outstanding categories of information under § 34-255i. The trial court ultimately rendered judgment for the plaintiffs, and the defendant appealed. *Held*:

1. There was no merit to the defendant's claim that, in order for the investigation of mismanagement to be a proper purpose within the meaning of § 34-255i (b) (2) (A), the member of a limited liability company must come forward with facts evidencing a credible basis to infer that mismanagement may have occurred, as the text of § 34-255i neither contains a credible proof requirement nor assigns any particular burden of proof depending on the inspection purpose that is alleged, and there was no policy basis that justified reading a credible proof of mismanagement requirement into § 34-255i: although some jurisdictions, including Delaware, have adopted the requirement of credible proof of mismanagement, this court found the arguments cited by other jurisdictions against that standard to be more persuasive, including the principle that the books of a corporation are not the private property of the directors or managers but are the records of their transactions as trustees for the shareholders, and the theory that a credible proof of mismanagement requirement would often deny shareholders the right to ascertain whether their affairs have been properly conducted by the directors or managers; moreover, because the determination of whether an obligation exists to provide factual support for the stated purpose of investigating mismanagement turns on whether the court interprets the legal requirements in the applicable statute to include an express or implied condition that the shareholder is seeking the information in good faith, the fact that the Connecticut Business Corporation Act expressly incorporates a requirement that the shareholder is seeking the information in good faith, whereas the Connecticut Uniform Limited Liability Company Act does not impose such a condition for an inspection by a member of a limited liability company, cuts strongly against imposing a credible proof requirement on limited liability company members; furthermore, the defendant's claim that, in the absence of a credible proof requirement, there would be no basis to limit inspection to information directly connected to the stated purpose, as required by § 34-255i (b) (2) (C), was unavailing, as a request seeking inspection of records in order to investigate mismanagement will typically set forth facts evidencing a basis to suspect mismanagement, and, when such facts are not provided, there are mechanisms other than a credible proof requirement to vindicate a limited liability company's concerns, including the trial court's discretion to require the member of a limited liability company to provide greater specificity, or to limit the scope of inspection if the member's request is too burdensome or inadequately justified, as well as the limited liability company's right to resist the inspection by

Benjamin *v.* Island Management, LLC

demonstrating that the conditions of § 34-255i have not been met, or to impose reasonable restrictions on the availability and use of information sought under § 34-255i through its operating agreement.

2. The defendant could not prevail on its claim that the trial court was required to determine, pursuant to § 34-255i (b) (2) (C), that there was a direct connection between each of the four categories of information at issue and one of the two specific purposes asserted in the four demands but that it failed to engage in such an analysis: the trial court expressly acknowledged that § 34-255i required that the information sought has a direct connection to a proper purpose and cited case law interpreting that requirement, and, although the trial court did not make an express finding of a direct connection for each category of information at issue, this court presumed, in the absence of evidence to the contrary, that the trial court concluded that this requirement was met; moreover, the defendant mistakenly assumed that the trial court did not rely on the plaintiffs' valuation purpose and that the plaintiffs' sole mismanagement concerns were excessive manager compensation and management fees, as the court cited case law and testimony concerning the plaintiffs' valuation inspection purpose, and H's final demand identified a valuation purpose as one of its two purposes.

3. The defendant could not prevail on its claim that two types of information sought at trial, namely, the general ledger and employee compensation, were not requested with reasonable particularity, as required by § 34-255i (b) (2) (B), on the ground that neither was requested in H's demands: the trial court correctly concluded that several of the categories cited in H's fourth demand referenced information of the type that would be in a general ledger and that this reference was sufficiently particular to apprise the defendant about the information needed; moreover, although information about employee compensation was not requested in any written demand with reasonable particularity, the count of the plaintiffs' complaint alleging a breach of the operating agreement supported the trial court's decision to order the defendant to permit inspection of its employee compensation information, because the count of the plaintiffs' complaint alleging a breach of the operating agreement was not purely derivative of the count alleging a violation of § 34-255i, and the defendant was afforded an opportunity to assert its right to arbitrate any dispute arising under the operating agreement insofar as the plaintiffs' complaint provided fair notice that an independent violation of the operating agreement was alleged.

Argued December 9, 2020—officially released November 2, 2021*

*Procedural History*

Action for a writ of mandamus to compel the defendant to make certain books and records available for

* November 2, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Benjamin *v.* Island Management, LLC

inspection by the plaintiff, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where Scott A. Weisman et al., as cotrustees of the William Ziegler III Family Irrevocable Trust Agreement dated June 3, 2002, were substituted as the plaintiffs; thereafter, the case was tried to the court, *Hon. A. William Mottolese*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment for the substitute plaintiffs, from which the defendant appealed to the Appellate Court; subsequently, the court, *Hon. A. William Mottolese*, judge trial referee, issued an articulation of its decision, and the defendant filed an amended appeal; thereafter, the appeal was transferred to this court. *Affirmed.*

*Lynn K. Neuner*, with whom were *Charles W. Pieterse*, *Wyatt R. Jansen* and *Sara A. Ricciardi*, pro hac vice, for the appellant (defendant).

*Steven M. Frederick*, with whom were *David G. Keyko*, pro hac vice, and, on the brief, *Christopher Fennell*, pro hac vice, and *Gessi Giarratana*, for the appellees (substitute plaintiffs).

*Opinion*

MULLINS, J. The principal issue in this appeal is one of first impression regarding the conditions under which a member of a manager-managed limited liability company (LLC) is permitted to inspect the LLC's books and records pursuant to General Statutes § 34-255i,[1] a

[1] Section 34-255i distinguishes between inspection rights and duties in member-managed companies and in manager-managed companies. Subsection (b) of § 34-255i, which applies in the present case, provides in relevant part: "In a manager-managed limited liability company, the following rules apply:

* * *

"(2) During regular business hours and at a reasonable location specified by the company, a member may inspect and copy full information regarding the activities, affairs, financial condition and other circumstances of the company as is just and reasonable if: (A) The member seeks the information for a purpose reasonably related to the member's interest as a member; (B) the member makes a demand in a record received by the company, describing

Benjamin *v.* Island Management, LLC

provision of the Connecticut Uniform Limited Liability Company Act (CULLCA), General Statutes § 34-243 et seq. Specifically, we consider whether such a member seeking information for the stated purpose of ascertaining whether mismanagement has occurred must produce credible proof that mismanagement may have occurred as a precondition for exercising the member's statutory inspection right. The defendant, Island Management, LLC, appeals from the judgment of the trial court holding that the defendant's refusal to disclose certain information to the substitute plaintiffs, cotrustees of the Helen Benjamin 2002 Trust,[2] a member of the defendant LLC, violated both § 34-255i and the defendant's operating agreement.[3] The defendant contends that the trial court (1) incorrectly concluded that there is no requirement under § 34-255i that the requesting member produce credible proof of mismanagement, and (2) improperly failed to apply other statutory requirements. It further contends that the alleged violation of its operating agreement is merely derivative

with reasonable particularity the information sought and the purpose for seeking the information; and (C) the information sought is directly connected to the member's purpose.

"(3) Not later than ten days after receiving a demand pursuant to subparagraph (B) of subdivision (2) of this subsection, the company shall in a record inform the member that made the demand of: (A) The information that the company will provide in response to the demand and when and where the company will provide the information; and (B) the company's reasons for declining, if the company declines to provide any demanded information. . . ."

General Statutes § 34-271, which was not cited in the operative complaint, authorizes a direct action against another member, a manager, or the LLC to enforce the member's rights and to protect the member's interests, including those arising under an LLC's operating agreement.

[2] Consistent with the parties' designation, we use the term Benjamin 2002 Trust to refer to the trust interest created for the benefit of Helen Ziegler Benjamin by the William Ziegler III Family Irrevocable Trust Agreement, dated June 3, 2002.

[3] The defendant directly appealed to the Appellate Court, and we thereafter transferred the defendant's subsequently amended appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Benjamin *v.* Island Management, LLC

of the alleged statutory violation, not an independent basis for relief, and, therefore, the former fails for the same reasons that the latter fails. We affirm the trial court's judgment.

The record reveals the following undisputed facts and procedural history. In 2002, William Ziegler III created trusts for the benefit of each of his six children: Helen Ziegler Benjamin, William (Bill) T. Ziegler, Cynthia Ziegler Brighton, Karl H. Ziegler, Melissa J. Ziegler, and Peter M. Ziegler.[4] These trusts own, directly or indirectly, several family businesses from which the siblings receive dividends. In 2015, Forbes Magazine estimated the collective value of the Ziegler family entities to be in excess of $2.8 billion.

The defendant, a manager-managed LLC headquartered in Darien, was created to oversee and build the family's assets. Those assets are held by Hay Island Holding Corporation (Hay Island). Hay Island's primary assets are two wholly owned subsidiaries: Swisher International, Inc., a major supplier of cigars, and Ned's Island Investment Corporation, an investment vehicle that manages a substantial portfolio. The defendant provides management services relating to both of these subsidiaries, providing advice on investment of capital, acquisitions, and day-to-day operations, among other things. The defendant derives income from two management services agreements, one with Hay Island and one with Swisher.

Each of the six siblings' trusts are members and equal one-sixth owners of the defendant. The defendant is governed by an operating agreement executed by all six siblings as trustees of their respective trusts. The sibling trustees contemporaneously executed a document consenting to the appointment of two of the sib-

_____

[4] For the purpose of simplicity, we refer to each of the siblings individually by first name when appropriate.

Benjamin *v.* Island Management, LLC

lings, Bill and Cynthia, as comanagers of the defendant. As comanagers, they were authorized under the operating agreement to hire officers and to set officer salaries. The sibling trustees subsequently consented to the appointment of Bill and Cynthia to serve as copresidents of the defendant. During the relevant period, in addition to Bill and Cynthia, the defendant had four officers, including one person acting as chief operating officer and chief finance officer, and six nonofficer employees.

Bill and Cynthia also have significant roles in family enterprises from which the defendant receives income. Bill is Hay Island's chief executive officer and chairman. Cynthia is Hay Island's president and treasurer. Bill and Cynthia sit on Swisher's compensation committee.

Sometime after the death of the siblings' father in 2008, a disagreement arose among some of the siblings regarding the amount of the annual distributions. The net return of the distributions to each sibling's trust was well under 1 percent of the Forbes estimate of the total value of the family enterprises. Helen, who has no children, believed that the family businesses should be making larger distributions to benefit present trust beneficiaries. Bill, Cynthia, and Karl, some of whom have children, took the position that the present distribution levels were satisfactory and that more earnings should be retained to preserve the family's wealth for future generations.[5] Neither the instrument creating the siblings' trusts nor the defendant's operating agreement contained a statement of purpose regarding the father's intent on this matter.

As a result of this ongoing disagreement, in early 2016, Helen was approached by the other Ziegler trustees about a potential buyout offer for her interests in

---

[5] Helen's siblings did, however, approve a onetime $50 million payment to Helen in 2012, as a consequence of the disagreement over distributions.

Benjamin *v.* Island Management, LLC

the family businesses. That offer was well below the value her one-sixth interest would have yielded if the Forbes estimate were accurate. Helen made an informal request for financial and related information about the defendant and other family enterprises, which was denied.[6]

Thereafter, the original plaintiff, Helen, in her capacity as cotrustee of her trust, made a series of four written demands for inspection of the defendant's books and records—respectively dated June 20 and July 7, 2016, April 11, 2017, and June 29, 2018—each of which cited § 34-255i (or its predecessor) as authority for the demand.[7] Section 34-255i (b) (2) permits members of a manager-managed LLC to obtain "information regarding the activities, affairs, financial condition and other circumstances of the company" if certain conditions are met. See footnote 1 of this opinion. The defendant produced many records in response to each of the successive demands but refused to produce others, claiming that the information was unnecessary (irrelevant or already provided through prior disclosures) or the request was improper.

Helen received incomplete information about the compensation Bill and Cynthia received as managers and copresidents. This information revealed that their

_____

[6] Helen thereafter obtained a valuation of her trust's collective interests from an accounting firm, which purportedly was characterized as preliminary due to incomplete information. That estimate far exceeded what the other siblings had offered to pay for Helen's interests, and the buyout offer was withdrawn in early 2017.

[7] The first three demands cited General Statutes § 34-144, and the fourth demand cited § 34-255i, which replaced the former as of July 1, 2017. The operative complaint alleged only a violation of § 34-255i, and the plaintiffs have made no argument that § 34-144 (c), which did not impose the same express preconditions to inspection as § 34-255i; see footnote 16 of this opinion; governed their inspection rights for any of the categories of information at issue in this case. Our analysis therefore focuses exclusively on § 34-255i.

Benjamin *v.* Island Management, LLC

collective annual compensation significantly increased from 2011 to 2016, while annual distributions to members remained roughly flat or decreased during this same period.[8]

The final demand requested twenty-seven categories of information, including financial statements, income tax returns, descriptions of cash and assets, manager and officer compensation/procedure for setting compensation, and information relating to management arrangements and fees. The stated purposes of the demand were (1) to "determine the value of the Benjamin 2002 Trust's membership interest in the [defendant]"[9] and (2) to "ascertain the condition and affairs of such entities so that the Benjamin 2002 Trust may exercise its rights as a member of the [defendant] in an informed manner." Regarding this second purpose, Helen's demand letter, which was addressed to Bill and Cynthia, further explained: "I have concerns because of the inherent conflict [of interest] that you have as a result of your personal financial interests as copresidents and managers of the [defendant], the interests of trusts for your benefit in the [defendant] and related businesses, your roles in the businesses to which the [defendant] provides management services, and your roles as trustees of trusts having interests in such related businesses. I have requested documents con-

---

[8] Member distributions increased in 2012 and 2013 but thereafter dropped to approximately 2011 levels or lower. Information disclosed by the time of the trial revealed that 2017 and 2018 comanager compensation was two and one-half to three times the 2011 comanager compensation.

[9] The fourth demand linked this valuation purpose to another purpose relating to a pending transfer of Peter's trust interest, following his death in 2017, specifically to determine whether the Benjamin 2002 Trust should exercise its "right of first refusal" of that interest pursuant to the operating agreement. The right of first refusal under the operating agreement was resolved in arbitration and is not relevant to the present appeal. Another appeal is pending before this court relating to Peter's testamentary power of appointment. The legal issues in that matter have no bearing on the present appeal.

Benjamin *v.* Island Management, LLC

cerning the management arrangements and compensation of the [defendant's] managers and officers . . . because I wish to evaluate whether such arrangements and payments are proper. In particular, I wish to investigate the appropriateness of fees paid to the [defendant] from other family owned entities. I believe those fees may be inflated in order to increase revenue for the [defendant]. I also believe that the fees paid to the managers of the [defendant], who determine their own compensation and benefits without consulting or even advising the members of the [defendant], may be excessive. The refusal to provide information to the members of the [defendant] concerning such payments raises questions about the propriety of the management arrangements and fees. I therefore have a reasonable basis to suspect possible irregularities. The requested information and documents are necessary to investigate whether the payments were, in fact, improper.''

In response to the final demand, the defendant agreed to produce reasonable updates to certain information previously provided but refused to produce any other information. The defendant's written reply to the demand asserted that the request for information was unreasonable and/or that the production of additional information was unnecessary as to the stated valuation purpose because the defendant had already disclosed sufficient records to achieve that purpose. The reply also asserted that the request was improper as to the stated mismanagement purpose because the statutory inspection right requires credible proof of mismanagement, of which there was none.

Helen, in her capacity as trustee of her trust, thereafter commenced the present action by way of a two count complaint seeking to compel the defendant to comply with her inspection demands. The first count alleged that the member trust's right to inspection under § 34-255i had been violated. The second count alleged

that the defendant's failure to comply with the inspection demands was a breach of § 5.7 of the defendant's operating agreement.[10] The defendant filed an answer and asserted special defenses to both counts, claiming that the demands were made for improper purposes— to maximize Helen's financial gain, to engage in a fishing expedition to find any possible basis for a claim against the defendant, and to harass the defendant—and that the action was moot because Helen had received all of the documents to which she legally was entitled. Shortly after the complaint was filed, Scott A. Weisman and Stephen D. Benjamin, Helen's husband, were appointed successor trustees of the Benjamin 2002 Trust, and the court thereafter granted a motion to substitute them, in their capacity as trustees, as the plaintiffs in the present action.[11]

At some point prior to trial, the defendant provided additional information to the plaintiffs, although it disclaimed any legal obligation to do so. By the time trial commenced, the plaintiffs contended that there were four categories of information remaining at issue: (1)

---

[10] Section 5.7 of the defendant's operating agreement provides: "The [m]anagers shall maintain and preserve, during the term of the [c]ompany, and for seven (7) years thereafter, all accounts, books, and other relevant [c]ompany documents as provided in [§] 9.2 of this [o]perating [a]greement. Upon request, each [m]ember and [e]conomic [i]nterest [o]wner shall have the right, during ordinary business hours, to inspect and copy any and all of the books and records of the [c]ompany at the expense of the [m]ember or [e]conomic [i]nterest [o]wner making such request."

Section 9.2 of the operating agreement requires the defendant to keep (1) a current list of its past and present members, (2) copies of its articles of organization, all amendments thereto, and any powers of attorney pursuant to which an amendment had been exercised, (3) copies of its federal, state, and local income tax returns and financial statements for the six most recent fiscal years, and (4) copies of any of its past and present written operating agreements and amendments thereto. Helen sought all of these records in her demands, and the defendant initially withheld some but eventually produced all of them.

[11] For convenience, we hereafter refer to the substitute plaintiffs as the plaintiffs in this opinion.

Benjamin *v.* Island Management, LLC

the defendant's general ledger; (2) information pertaining to the defendant's management services agreements with Hay Island and Swisher; (3) information pertaining to the compensation of the defendant's managers, officers, and employees; and (4) records showing payments made to third parties on behalf of the Benjamin 2002 Trust.

At trial, the parties stipulated to the admission of numerous documents pertaining to the business of the Ziegler family enterprises and the defendant's operations in particular, some of which had been previously disclosed in response to Helen's written demands, and documents memorializing communications between the parties.[12] The plaintiffs presented testimony from two witnesses: Weisman, one of the substitute plaintiff trustees, whose background was in corporate law, investment banking, and capital markets; and Vladimir Starkov, a certified valuation analyst specializing in intercompany pricing and asset valuation. The defendant presented testimony from one witness, Howard Romanow, the defendant's chief operating officer and chief finance officer since 2011. The plaintiffs argued, in essence, that they were entitled to inspect the remaining categories of information because the evidence called into question (1) whether manager and copresident compensation for Bill and Cynthia was excessive (in part because actual management of the defendant appeared to have been delegated to Romanow and other highly compensated professional staff), which, in turn, affected the fair value of the defendant,[13] and (2) whether that compensation, if excessive,

_____

[12] Pursuant to the parties' request, the trial court ordered the exhibits, the parties' trial briefs, and the trial transcripts to be sealed to protect confidential information.

[13] Weisman explained that overpayment of compensation would affect fair value because the amount of overpayment should come out of the company's profit and loss and be recharacterized as a distribution. The intrinsic worth of the businesses is their "fair value," as opposed to fair *market* value, because the siblings' interests cannot be sold in the open market.

Benjamin *v.* Island Management, LLC

constituted a disguised distribution not made available to the other siblings or their respective member trusts.

The trial court thereafter issued a written decision, concluding that the plaintiffs had demonstrated that they were entitled to inspect each of the four outstanding categories of information under § 34-255i. It cited case law from our Appellate Court recognizing that a corporate shareholder's desire to value shares or to determine whether improper transactions have occurred are proper inspection purposes. It rejected an argument raised in the defendant's trial brief that Connecticut courts should interpret § 34-255i, as Delaware courts had interpreted that state's corporate records inspection statute, to require credible proof of mismanagement when inspection is sought for the alleged purpose of investigating mismanagement. The trial court also determined that there was no merit to the defendant's special defenses. The court found that there was no evidence that the plaintiffs were pressing their inspection demands for the purpose of pressuring Helen's siblings to increase dividends or the buyout offer, or to harass them.[14] The court noted, however, that it would not be improper, in any event, for a trustee to seek to maximize income or asset value.

The court also addressed two arguments raised by the defendant at trial but not pleaded as special defenses contesting the plaintiffs' entitlement to pursue relief under the operating agreement: (1) the plaintiffs had waived that right by pursuing a mutually exclusive statutory claim, and (2) the plaintiffs were barred from seeking such relief in a judicial action because there is a mandatory arbitration provision in the operating agree-

---

[14] The basis for the harassment allegation appears to be not only the expansiveness of the inspection request, but also the fact that Helen had initiated several other legal proceedings against various Ziegler entities or officers of those entities.

Benjamin *v.* Island Management, LLC

ment. In rejecting these arguments, the court noted that § 5.7 of the operating agreement "has particular significance to the present case because it evinces a clear and unmistakable intent that all books and records of the [defendant] should be open to inspection and copying for any legitimate purpose . . . . The court sees this provision as not only confirmatory of the statutory remedy but as expansive of it so much so that the request need not even be in writing." (Internal quotation marks omitted.)

Despite its conclusions as to the operating agreement, the trial court initially rendered judgment for the plaintiffs only on count one, the statutory violation. Following the defendant's motion for articulation, the court modified the judgment to include judgment in favor of the plaintiffs on the second count as well.[15] The defendant then filed an amended appeal with the Appellate Court, which we transferred to this court. See footnote 3 of this opinion.

On appeal, the defendant claims that the trial court improperly rendered judgment for the plaintiffs and that the case must be remanded for a new trial under the proper legal standard. Specifically, it contends that the trial court erred as a matter of law by failing to apply various statutory requirements. It further contends that the claimed violation of the operating agreement was

---

[15] The defendant originally appealed to the Appellate Court, which issued an order to show cause why the appeal should not be dismissed for lack of a final judgment, pursuant to *Meribear Productions, Inc.* v. *Frank*, 328 Conn. 709, 183 A.3d 1164 (2018). That case held that a final judgment has not been rendered if the trial court has failed to dispose of a count alleging an alternative theory of recovery that is not legally inconsistent with a count on which judgment was rendered. See id., 717–24. The defendant then sought an articulation from the trial court as to whether it had disposed of count two, which the court granted. The trial court's articulation stated that the judgment would be modified to render judgment for the plaintiffs on both counts, citing two pages of its written decision in which it had discussed the operating agreement.

Benjamin *v.* Island Management, LLC

purely derivative of the statutory violation and, thus, cannot provide an alternative basis on which to affirm the judgment. We disagree with both contentions.

I

We turn first to the question of whether the trial court correctly determined that the defendant's conduct violated the plaintiffs' statutory inspection right. Section 34-255i (b) (2) provides in relevant part: "[A] member may inspect and copy full information regarding the activities, affairs, financial condition and other circumstances of the company *as is just and reasonable if*: (A) The member seeks the information for a *purpose reasonably related to the member's interest as a member*; (B) the member makes a demand in a record received by the company, *describing with reasonable particularity the information sought and the purpose for seeking the information*; and (C) the information sought is *directly connected to the member's purpose*." (Emphasis added.)

The defendant claims that the trial court improperly failed to apply three statutory requirements. First, the defendant contends that the court failed to recognize that investigating mismanagement is a proper purpose for inspection only if there is credible proof that mismanagement may have occurred. The defendant deems this omission fatal because, according to the defendant, the trial court's decision did not rely on the alternative, valuation purpose cited in Helen's demands. Second, the defendant contends that the court failed to apply the requirement that the information sought must be "directly connected" to a proper purpose stated in the demand. Third, the defendant contends that the court failed to apply the requirement of stating the information requested with "reasonable particularity" as to the general ledger and employee compensation because

341 Conn. 189 FEBRUARY, 2022 205

Benjamin *v.* Island Management, LLC

neither was expressly or implicitly referenced in the written demands.

A

We begin by setting out the legal landscape that informs our analysis. The Uniform Limited Liability Company Act of 2006, as harmonized (ULLCA), or one of its predecessors has been adopted by nineteen states, including Connecticut, and by the District of Columbia. See Uniform Law Commission, Limited Liability Company Act, Revised, at https://www.uniformlaws.org/commit tees/community-home?CommunityKey=bbea059c-6853 -4f45-b69b-7ca2e49cf740 (last visited November 2, 2021). The inspection provision of the ULLCA that is the counterpart to § 34-255i, § 410, has not been subjected to judicial scrutiny by any of these jurisdictions. There is also no illuminating Connecticut legislative history.[16]

Yet, we are not altogether without guidance on this subject. Because LLCs are creatures of statute that are viewed as a hybrid of a partnership and a corporation, having some attributes of each,[17] courts often rely on

---

[16] Connecticut adopted the ULLCA in 2016; see Public Acts 2016, No. 16-97; which went into effect on July 1, 2017. That public act repealed the then existing LLC inspection provision, which provided in relevant part: "During ordinary business hours a member may, at the member's own expense, inspect and copy *upon reasonable request* any limited liability company record, wherever such record is located." (Emphasis added.) General Statutes (Rev. to 2015) § 34-144 (c). This predecessor statute similarly was not subjected to judicial scrutiny by our courts. But see *In re Newman*, 500 B.R. 328, 330–32 (Bankr. D. Conn. 2013) (addressing whether attorney-client privilege shielded documents from inspection under predecessor statute). In the absence of any case law or legislative history, there is no clear indication whether the multipronged successor statute was intended to give greater clarity to considerations subsumed under the existing reasonableness standard or was intended to impose a more stringent standard.

[17] "Our common law does not recognize LLCs, which were first created by statute in Connecticut in 1993. Public Acts 1993, No. 93-267. An LLC is a distinct type of business entity that allows its owners to take advantage of the pass-through tax treatment afforded to partnerships while also providing them with limited liability protections common to corporations." *Styslinger* v. *Brewster Park, LLC*, 321 Conn. 312, 317, 138 A.3d 257 (2016); see, e.g., *Marx* v. *Morris*, 386 Wis. 2d 122, 138, 925 N.W.2d 112 (2019) ("Similar to a

206 FEBRUARY, 2022 341 Conn. 189

Benjamin *v.* Island Management, LLC

jurisprudence pertaining to those entities when addressing comparable considerations for LLCs. See E. Miller, ''Are the Courts Developing a Unique Theory of Limited Liability Companies or Simply Borrowing from Other Forms?,'' 42 Suffolk U. L. Rev. 617 (2009); see, e.g., *Morris* v. *Cee Dee, LLC*, 90 Conn. App. 403, 414, 877 A.2d 899 (applying theories of piercing corporate veil to LLCs), cert. granted, 275 Conn. 929, 883 A.2d 1245 (2005) (appeal withdrawn March 13, 2006). As we explain subsequently in this opinion, the contested statutory terms in this appeal are the same as those applied to corporate records inspection, which, unlike partnership and LLC records inspection, has been the subject of a well-developed body of law. We therefore consider the treatment of this subject for corporations, as well as any reasons to distinguish treatment of this subject as applied to LLCs.[18]

partnership, an LLC allows for informality and flexibility of organization and operation, internal governance by contract, direct participation by members in the business, and no taxation at the entity level. . . . Similar to a corporation, however, an LLC grants its investors limited liability such that a member is not personally liable for any debt, obligation or liability of the [LLC], except that a member or manager may become personally liable by his or her acts or conduct other than as a member. . . . Therefore, as with a shareholder in a corporation, each LLC member's potential liability to third parties is limited to the amount the member chose to invest in the LLC.'' (Citations omitted; internal quotation marks omitted.)).

[18] The trial court in the present case suggested that corporate records inspection statutes should not be consulted because a material difference between corporations and LLCs is the ''magnitude of the number of shareholders who own a publicly traded [corporation].'' Although this statement may be factually accurate in the majority of cases, there is no legal limit to the number of members of an LLC, and some have hundreds of members. See E. Welle, ''Limited Liability Company Interests as Securities: An Analysis of Federal and State Actions Against Limited Liability Companies Under the Securities Laws,'' 73 Denv. U. L. Rev. 425, 431 (1996); see also L. Brenman, ''Limited Liability Companies Offer New Opportunities to Business Owners,'' 10 J. Partnership Taxation 301, 308 (1994). Moreover, ''corporations, partnerships, pension plans, and foreign investors may become members of an LLC.'' L. Brenman, supra, 308. We do not intend to suggest, however, that an inspection request always must yield the same result regardless of whether it is made to a closely held LLC or to a large, publicly traded corporation. As we explain subsequently in this opinion, the trial court has discretion

Benjamin *v.* Island Management, LLC

The common law has long recognized the right of shareholders to inspect a corporation's books and records for a "proper purpose," which, consistent with the requirement in § 34-255i (b) (2) (A), has been interpreted to mean a purpose reasonably related to such person's interest as a shareholder. See, e.g., *State ex rel. Costelo* v. *Middlesex Banking Co.*, 87 Conn. 483, 484–85, 88 A. 861 (1913); *Pagett* v. *Westport Precision, Inc.*, 82 Conn. App. 526, 532, 845 A.2d 455 (2004); see also Annot., "Purposes for Which Stockholder or Officer May Exercise Right To Examine Corporate Books and Records," 15 A.L.R.2d 15, § 2 (1951). See generally 5A T. Bjur & D. Jensen, Fletcher Cyclopedia of the Law of Private Corporations (Rev. 1995) § 2214, p. 342.

Most jurisdictions have adopted statutes prescribing conditions for the inspection of books and records of both corporations and partnerships. Many of these statutes incorporate common-law principles. See generally 5A T. Bjur & D. Jensen, supra, § 2246, p. 490; A. Sparkman, "Information Rights—A Survey," 2 Bus. Entrepreneurship & Tax L. Rev. 41, 43–44, 117 (2018). Some statutes are based on model or uniform acts that were the source of the terms and conditions in § 410 of the ULLCA, the inspection provision: inspection if just and reasonable, purpose reasonably related to the person's interest as a member of that entity, demand made with reasonable particularity, and information directly connected to the asserted purpose. See Unif. Limited Liability Company Act § 410, comment (amended 2013), 6C U.L.A. 114 (2016) (acknowledging that language is derived from §§ 304 and 407 of Uniform Limited Partnership Act of 2001); Unif. Limited Partnership Act § 304, comment (amended 2013), 6B U.L.A. 86 (2016)

to consider many factors when assessing whether to allow inspection and the reasonable scope of inspection, and the entities' governing agreement may impact inspection rights as well. See footnote 21 of this opinion (acknowledging other differences in statutes).

Benjamin *v.* Island Management, LLC

(acknowledging that language is derived from § 16.02 of American Bar Association's Model Business Corporation Act); see also Model Business Corporation Act (A.B.A. 2002) § 16.02, comment (3), p. 16-9 ("A 'proper purpose' means a purpose that is reasonably relevant to the demanding shareholder's interest as a shareholder. Some statutes do not use the phrase 'proper purpose'; the Model [Business Corporation] Act continues to use it because it is traditional and well understood language defining the scope of the shareholder's right of inspection and its use ensures that the very substantial case law that has developed under it will continue to be applicable under the revised [a]ct."). Connecticut has not adopted any version of the Uniform Limited Partnership Act[19] but has adopted the Model Business Corporation Act.[20] See Connecticut Business Corporation Act, General Statutes § 33-600 et seq.

We look to the jurisprudence interpreting these other sources—statutory and common law—to inform our analysis, and rely on them to the extent they are persuasive.[21] Consistent with these sources, for convenience,

_____

[19] Connecticut's statutes governing partnership inspection rights have not been amended for several decades, and the one applicable to limited partners, General Statutes § 34-18, is similar to the predecessor to § 34-255i for LLC inspection, General Statutes (Rev. to 2015) § 34-144 (c). See footnote 16 of this opinion.

[20] General Statutes § 33-946, which mirrors § 16.02 of the Model Business Corporation Act; see *Pagett* v. *Westport Precision, Inc.*, supra, 82 Conn. App. 533; provides in relevant part: "(d) A shareholder may inspect and copy the records described in subsection (c) of this section only if: (1) His demand is made in good faith and *for a proper purpose*; (2) he describes with *reasonable particularity* his purpose and the records he desires to inspect; and (3) the records are *directly connected* with his purpose. . . ." (Emphasis added.)

[21] We do not intend to suggest that, simply because these sources impose similar conditions to the ones at issue in the present case, they afford the same scope of inspection under the same conditions in every case. There are some material differences in these statutes regarding the treatment of certain categories of information. Shareholders and limited partners have the right to inspect certain records that the corporations and partnerships are statutorily required to maintain without any showing of good cause. See

Benjamin *v.* Island Management, LLC

we use the term "proper purpose" as shorthand for a purpose reasonably related to the requesting party's interest as a member, shareholder, or partner.

B

The defendant's principal claim is that, in order for the investigation of mismanagement to be a proper purpose, the LLC member must come forward with facts evidencing a credible basis to infer that mismanagement may have occurred. The defendant points to the adoption of this standard for shareholder inspection by Delaware, a leading business law jurisdiction. It contends that a requirement of credible proof of mismanagement is necessary to ascertain whether the information sought is "directly connected" to a proper purpose and to ensure that the member is not seeking unfettered access to information for improper purposes. In advancing this argument, the defendant does not contend that credible proof is required to support any inspection purpose, but only when the proffered purpose involves a claim of mismanagement or comparable wrongdoing. It contends that there is a difference between a purpose such as valuation of a member's interest, which is "common to all members, suggests no wrongdoing, and implicates a discrete universe of information," and the purpose of investigating mismanagement, which has the opposite characteristics.

---

Unif. Limited Liability Company Act § 410 (a) (1), supra, 6C U.L.A. 113; Unif. Limited Partnership Act § 304 (a), supra, 6B U.L.A. 84. LLCs are no longer statutorily required to maintain any specific records under Connecticut law; see Public Acts 2016, No. 16-97, § 110 (repealing General Statutes § 34-144); and the CULLCA draws no distinction for inspection rights based on the type of records sought. Shareholders may inspect specific types of records; see General Statutes § 33-946 (c); whereas LLC members may inspect information "regarding the company's activities, affairs, financial condition, and other circumstances . . . ." Unif. Limited Liability Company Act § 410 (a) (1), supra, 6C U.L.A. 113; see Unif. Limited Partnership Act § 304 (b), supra, 6B U.L.A. 84 (recognizing same inspection rights with respect to limited partners).

Benjamin *v.* Island Management, LLC

The plaintiffs assert that our Appellate Court's case law involving shareholder inspection rights is incompatible with the credible proof requirement. They point to *Pagett* v. *Westport Precision, Inc.*, supra, 82 Conn. App. 526, in which the Appellate Court quoted the following official comment to the inspection provision in the Model Business Corporation Act: "As a practical matter, a shareholder who alleges a purpose in general terms, such as a desire to determine the value of his shares, to communicate with fellow shareholders, *or to determine whether improper transactions have occurred*, has been held to allege a proper purpose." (Emphasis added; internal quotation marks omitted.) Id., 533–34, quoting Model Business Corporation Act, supra, § 16.02, comment (3), p. 16-9.

We are not persuaded that the cursory reference by the court in *Pagett* to improper transactions constitutes due consideration of the particular issue before us. The inspection purpose at issue in *Pagett* was to value the plaintiff's shares. *Pagett* v. *Westport Precision, Inc.*, supra, 82 Conn. App. 534. The court in *Pagett* had no occasion to examine case law from other jurisdictions addressing the investigation of mismanagement. Moreover, an argument could be made that the Model Business Corporation Act's reference to allegations of "improper transactions" could be read consistently with the Delaware standard that the defendant advocates (i.e., the nature of the impropriety alleged—excessive management salaries, failure to adhere to legal or contractual requirements, depletion of assets, etc.—could indicate a factual basis for a suspicion of mismanagement).

We therefore consider the defendant's claim, which raises a question of statutory construction to which we apply plenary review. See id., 528. We observe, at the outset, that the text of § 34-255i neither contains a credible proof requirement nor assigns any particular burden

Benjamin *v.* Island Management, LLC

of proof depending on the inspection purpose that is alleged. That said, the terms in the statute are sufficiently elastic that we cannot say that the defendant's proposed standard is untenable as a matter of law.[22] We turn therefore to the case law that has considered this matter in the corporate context.

It is broadly recognized, as a general principle, that investigating mismanagement is a proper purpose for seeking inspection of corporate records. See Annot., 15 A.L.R.2d, supra, § 7, p. 30; see, e.g., *Compaq Computer Corp.* v. *Horton*, 631 A.2d 1, 5 (Del. 1993) ("[m]any cases recognize a [shareholder's] right to investigate past acts of mismanagement"); *State ex rel. Fussell* v. *McLendon*, 109 So. 2d 783, 786 (Fla. App. 1959) ("[a shareholder] in a corporation has, in the very nature of things and upon principles of equity, good faith, and fair dealing, the right to know how the affairs of the company are conducted and whether the capital of which he has contributed a share is being prudently and profitably employed" (internal quotation marks omitted)); *Kalanges* v. *Champlain Valley Exposition, Inc.*, 160 Vt. 644, 645, 632 A.2d 357 (1993) ("[p]roper purpose has been found [when] shareholders wanted . . . to ascertain possible mismanagement of the corporation"). In the vast majority of cases deeming inspection proper for this purpose, however, specific acts of actual mismanagement or facts providing a reasonable basis to suspect mismanagement were alleged. See Annot., 15 A.L.R.2d, supra, § 7, p. 33 ("it appears that in most of the cases [in which] the [shareholder] has been successful in enforcing an inspection on this ground there have been at least allegations suggesting grounds for suspicion of ineptitude or misconduct on the part of the officers or directors").

[22] Neither party is contending that all of the pertinent statutory terms are plain and unambiguous, susceptible to only one definition.

Benjamin *v.* Island Management, LLC

No jurisdiction holds that allegations or proof of *actual* mismanagement is required. See id.; see also, e.g., *Security First Corp.* v. *U.S. Die Casting & Development Co.*, 687 A.2d 563, 568 (Del. 1997) (expressly rejecting this requirement); *Arctic Financial Corp.* v. *OTR Express, Inc.*, 272 Kan. 1326, 1329–30, 38 P.3d 701 (2002) (same). But some jurisdictions, including Delaware, have held that a shareholder seeking to inspect corporate records to investigate whether the corporation is being properly managed must come forward with facts that demonstrate a reasonable basis to suspect mismanagement. See, e.g., *Brehm* v. *Eisner*, 746 A.2d 244, 267 n.75 (Del. 2000) ("a party needs to show, by a preponderance of the evidence, that there is a legitimate chance that [the party's] reason for suspecting mismanagement is credible"); *Security First Corp.* v. *U.S. Die Casting & Development Co.*, supra, 568 ("A mere statement of a purpose to investigate possible general mismanagement, without more, will not entitle a shareholder to broad [statutory] inspection relief. There must be some evidence of possible mismanagement as would warrant further investigation of the matter." (Emphasis omitted; internal quotation marks omitted.)). Delaware has the most developed body of case law articulating and applying this requirement,[23] but other jurisdictions have required similar fac-

[23] Delaware's corporate inspection statute requires a plaintiff to establish that inspection is for a "proper purpose," a term it defines as "reasonably related to such person's interest as a stockholder." Del. Code Ann. tit. 8, § 220 (b) (2011). This statute does not expressly limit inspection to records directly connected to the purpose advanced or require reasonable particularity in the demand, but Delaware courts have effectively adopted these requirements as part of the proper purpose requirement (i.e., if the record is not essential to accomplishing the purpose, it is not being sought for a proper purpose). See, e.g., *Security First Corp.* v. *U.S. Die Casting & Development Co.*, supra, 687 A.2d 569 ("The plaintiff bears the burden of proving that each category of books and records is essential to the accomplishment of the [shareholder's] articulated purpose for the inspection. . . . [I]t is the responsibility of the trial court to tailor the inspection to the [shareholder's] stated purpose." (Footnote omitted.)). Although the trial court discounted Delaware case law in part because that state did not

Benjamin *v.* Island Management, LLC

tual support, whether as allegations in the demand or evidentiary proof. See, e.g., *Weigel* v. *O'Connor*, 57 Ill. App. 3d 1017, 1025, 373 N.E.2d 421 (1978) (stating that "[g]ood faith fears of mismanagement are sufficient" after setting forth evidentiary basis for plaintiff's fears); *Bernstein* v. *Pritsker*, Docket No. MICV2012-3183-C, 2013 WL 678043, *4 (Mass. Super. February 14, 2013) (noting that, for closely held corporation, "[a] reasonable articulation of suspected facts, not mere speculation, supporting an inference of possible mismanagement or wrongdoing should be enough," but suggesting that, in other circumstances, Delaware's credible *proof* standard would apply); *Cain* v. *Merck & Co.*, 415 N.J. Super. 319, 334, 1 A.3d 834 (App. Div. 2010) ("unsupported allegations of mismanagement do not present a 'proper purpose' entitling a shareholder to examine corporate documents"); *Towle* v. *Robinson Springs Corp.*, 168 Vt. 226, 228, 719 A.2d 880 (1998) ("[c]laims of mismanagement . . . must be supported by evidence"); see also, e.g., *Meyer* v. *Board of Managers of Harbor House Condominium Assn.*, 221 Ill. App. 3d 742, 748, 583 N.E.2d 14 (1991) (pointing to plaintiff's affidavits that stated that defendant "[a]ssociation was not collecting assessments from delinquent unit owners" and "was incurring excessive [attorney's] fees" as establishing "a [good faith] fear that the [a]ssociation was mismanaging its financial matters, which was a proper purpose to inspect the [a]ssociation's records"); *North Oakland County Board of Realtors* v. *Realcomp, Inc.*, 226 Mich. App. 54, 58–60, 572 N.W.2d 240 (1997) ("[u]nder [Michigan] common law, a shareholder stated a proper purpose for an inspection by raising doubts whether corporate affairs had been properly conducted by the directors or management," and, although plaintiff's alleged inspection purposes to monitor company's

adopt the Model Business Corporation Act, we find the corporate inspection statutes, as interpreted, similar in material respects.

Benjamin *v.* Island Management, LLC

financial health and compliance with amended bylaws "were arguably overbroad and nonspecific," its subsequently submitted affidavit of accountant set forth "concerns regarding allocation of computer equipment, allegedly improper employee benefits, discrepancies between actual expenditures for tax line charges and the operating budget, expenditures in hiring certain employees, and reaffirmation of plaintiff's ownership interest" that were sufficiently "specific, limited in scope, and reasonably related" to plaintiff's interest as shareholder).

Several reasons have been offered as justification for the requirement of facts supporting a suspicion of mismanagement. Some courts cite the common-law principle that seeking inspection "for speculative purposes," "to gratify idle curiosity"; *Guthrie* v. *Harkness*, 199 U.S. 148, 156, 26 S. Ct. 4, 50 L. Ed. 130 (1905); or to undertake a "fishing expedition"; *News-Journal Corp.* v. *State ex rel. Gore*, 136 Fla. 620, 623, 187 So. 271 (1939); is not a proper purpose. See, e.g., *Nodana Petroleum Corp.* v. *State ex rel. Brennan*, 50 Del. 76, 81–82, 123 A.2d 243 (1956); *Weigel* v. *O'Connor*, supra, 57 Ill. App. 3d 1025; *Cain* v. *Merck & Co.*, supra, 415 N.J. Super. 332.

A related justification cited is that this standard balances the plaintiff's need for information for legitimate purposes against the burden imposed on the entity and other stakeholders. See, e.g., *Cain* v. *Merck & Co.*, supra, 415 N.J. Super. 333–34; see also, e.g., *Dynamics Corp. of America* v. *CTS Corp.*, 479 N.E.2d 1352, 1355 (Ind. App. 1985). These concerns are another way of saying that "the primary purpose of the inspection must not be one that is adverse to the best interests of the corporation." *Abdalla* v. *Qadorh-Zidan*, 913 N.E.2d 280, 287 (Ind. App. 2009), transfer denied, 929 N.E.2d 782 (Ind. 2010); see also *Cain* v. *Merck & Co.*, supra, 332 ("[a]n inspection to investigate possible wrongdoing

Benjamin *v.* Island Management, LLC

where there is no credible basis . . . is a license for fishing expeditions and thus adverse to the interests of the corporation'' (internal quotation marks omitted)).

Finally, this standard is sometimes justified as necessary to meet a statutorily imposed burden of proof. See, e.g., *Thomas & Betts Corp.* v. *Leviton Mfg. Co.*, 681 A.2d 1026, 1031 (Del. 1996) (''When a [shareholder] seeks inspection of books and records, the burden of proof is on the [shareholder] to demonstrate that his purpose is proper. . . . In order to meet that burden of proof, a [shareholder] must present some credible basis from which the court can infer that waste or mismanagement may have occurred.'' (Citation omitted; footnote omitted.)); *Weigel* v. *O'Connor*, supra, 57 Ill. App. 3d 1025 (describing burden of proof).[24]

Other jurisdictions, however, have rejected the proposition that inspection for the purpose of investigating mismanagement is not permitted unless the shareholder comes forward with facts substantiating the possibility that mismanagement may have occurred. See, e.g., *Schein* v. *Northern Rio Arriba Electric Cooperative, Inc.*, 122 N.M. 800, 804, 932 P.2d 490 (1997); *Lake* v. *Buckeye Steel Castings Co.*, 2 Ohio St. 2d 101, 105, 206 N.E.2d 566 (1965); *Rosentool* v. *Bonanza Oil & Mine Corp.*, 221 Or. 520, 532–33, 352 P.2d 138 (1960). This position appears to rely on the following principles.

First, ''[t]he books [of the corporation] are not the private property of the directors or managers, but are

---

[24] The Illinois and Delaware shareholder inspection statutes expressly impose the burden of proof either on the shareholder, requiring him or her to prove a proper purpose, or on the corporation, requiring it to prove that the shareholder does not have a proper purpose, depending on the type of records sought. See Del. Code Ann. tit. 8, § 220 (c) (2011); 805 Ill. Comp. Stat. Ann. 5/7.75 (b) and (c) (West 2010); see also N.J. Stat. Ann. § 14A:5-28 (3) and (4) (West Cum. Supp. 2020) (imposing burden of proof on shareholder, requiring him or her to prove proper purpose for inspection of certain records).

Benjamin *v.* Island Management, LLC

the records of their transactions as trustees for the [shareholders].'' (Internal quotation marks omitted.) *Guthrie* v. *Harkness*, supra, 199 U.S. 155. ''The right of inspection rests [on] the proposition that those in charge of the corporation are merely the agents of the [shareholders] who are the real owners of the property.'' Id.; see, e.g., *Schein* v. *Northern Rio Arriba Electric Cooperative, Inc.*, supra, 122 N.M. 803 (citing shareholder's ''right to know how his agents, the corporation's [decision makers], are conducting the affairs of the organization''); *Rosentool* v. *Bonanza Oil & Mine Corp.*, supra, 221 Or. 533 (citing same principle).

Second, ''[t]o say that [shareholders] have the right [to ascertain whether their affairs have been properly conducted by the directors or managers], but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases. Oftentimes frauds are discoverable only by examination of the books by an expert accountant.'' (Internal quotation marks omitted.) *Guthrie* v. *Harkness*, supra, 199 U.S. 155; see, e.g., *Schein* v. *Northern Rio Arriba Electric Cooperative, Inc.*, supra, 122 N.M. 804 (''We reject [the] contention that [the shareholder] needed to possess some basis for suspecting illegal or improper behavior on the part of [the corporation] to warrant the request for information. Such a proposition would thwart efforts of oversight by shareholders, making abuses of corporate power more likely. Moreover, it would deny owners their proprietary right of monitoring and safeguarding their interests.''). ''Until an examination of the corporate records is obtained, the shareholder often can do nothing more than entertain a belief of mismanagement . . . .'' *Rosentool* v. *Bonanza Oil & Mine Corp.*, supra, 221 Or. 533.

Third, in the absence of a clear statutory directive placing the burden on the shareholder to prove his or

341 Conn. 189 FEBRUARY, 2022 217

Benjamin *v.* Island Management, LLC

her purpose, it is sufficient for the shareholder to allege a proper purpose in general terms to make a prima facie case in support of inspection, and, if the corporation disputes that allegation, it may come forward with evidence that the primary purpose of inspection is, in fact, an improper purpose. See, e.g., *Schein* v. *Northern Rio Arriba Electric Cooperative, Inc.*, supra, 122 N.M. 803; *In re Marcato*, 102 App. Div. 2d 826, 826, 476 N.Y.S.2d 582 (1984); *Cooke* v. *Outland*, 265 N.C. 601, 615, 144 S.E.2d 835 (1965); *Lake* v. *Buckeye Steel Castings Co.*, supra, 2 Ohio St. 2d 105–106; *Rosentool* v. *Bonanza Oil & Mine Corp.*, supra, 221 Or. 533–34; see also, e.g., *Franklin* v. *Middle Tennessee Electric Membership Corp.*, Docket No. M2007-1060-COA-R3-CV, 2009 WL 2365572, *6 (Tenn. App. July 31, 2009) ("[t]here has been extensive litigation dealing with general questions involving access to corporate records, and while there is a split of authority as to where the burden of proof lies, the majority view is that the burden is on the corporation to prove an improper purpose").

We find the arguments against the Delaware standard more persuasive, especially as applied to LLC member inspection. The foregoing cases demonstrate that the decision as to whether an obligation exists to provide factual support for the stated purpose of investigating mismanagement seems to turn on whether the court interprets the legal requirements (1) to include an implied or express condition that the shareholder is seeking the information in good faith and (2) to impose the burden on the shareholder to prove good faith or on the entity resisting inspection to prove bad faith. These considerations bring into focus an important distinction between the statutory schemes for inspection of corporate records and for inspection of LLC records that was overlooked by the parties and the trial court in the present case.

The Connecticut Business Corporation Act expressly incorporates the first condition, permitting inspection

Benjamin *v.* Island Management, LLC

if the shareholder's demand "*is made in good faith* and for a proper purpose," i.e., a purpose germane to the shareholder's interest. (Emphasis added.) General Statutes § 33-946 (d). By contrast, the CULLCA does not impose such a condition for LLC member inspection except when inspection is sought by a *dissociated* member, who must not only satisfy all of the conditions that a current member must satisfy under § 34-255i (b) (2), but also the condition that "[t]he person seeks the information in good faith . . . ." General Statutes § 34-255i (c) (2). The absence of this good faith requirement for current LLC members cuts strongly against imposing a credible proof requirement on such members.[25]

We also are not persuaded by the defendant's argument that, in the absence of a credible proof requirement, there would be no basis to limit inspection to information "directly connected" to the stated purpose, as is required by § 34-255i (b) (2) (C), and thus a mere allegation of mismanagement could lead to unfettered and burdensome inspection.

If history is any guide, it demonstrates that, in most cases, a person seeking inspection of records in order to investigate mismanagement will provide facts evidencing a basis to suspect mismanagement in order to justify the scope of inspection sought. That was so in the present case.[26] When such facts are not provided,

[25] We express no opinion as to whether this statutory obligation would support a credible proof of mismanagement requirement for corporations, only that the absence of this requirement for current LLC members is a factor that weighs against a credible proof requirement for such members.

[26] The plaintiffs pointed to, among other things, the comanager siblings' conflicts of interest, which could have provided an opportunity for self-dealing, highly trained officers who managed the day-to-day operations of the businesses, a buyout offer that fell well short of a valuation estimate Helen obtained; see footnote 6 of this opinion; and manager/president compensation increasing almost threefold over an eight year period while member distributions decreased or stayed at approximately the same level for most of those years despite increased company earnings. See, e.g., *Weigel* v. *O'Connor*, supra, 57 Ill. App. 3d 1025 ("[a] desire to learn the reasons for lack of dividends or insubstantial dividends, and suspicion of mismanage-

there are mechanisms other than the credible proof requirement to vindicate the defendant's concerns.

Statutory conditions for inspection are cast in terms that plainly confer discretion on the court—purpose "*reasonably* related to the member's interest as a member"; (emphasis added) General Statutes § 34-255i (b) (2) (A); demand stated with "*reasonable* particularity"; (emphasis added) General Statutes § 34-255i (b) (2) (B); and information "*directly connected* to the member's purpose." (Emphasis added.) General Statutes § 34-255i (b) (2) (C). This discretion permits the trial court to require the LLC member to provide greater specificity when justified by the facts and circumstances of the case, including the nature of the entity and the extent of the member's knowledge of the company's business. See, e.g., Model Business Corporation Act, supra, § 16.02, comment (3), p. 16-9 (explaining that inspection provision "attempts to require more meaningful statements of purpose, *if feasible*, by requiring that a shareholder designate 'with reasonable particularity' his purpose and the records he desired to inspect" (emphasis added)); see also, e.g., *Security First Corp.* v. *U.S. Die Casting & Development Co.*, supra, 687 A.2d 569 ("While the trial court has wide latitude in determining the proper scope of inspection, it is the responsibility of the trial court to tailor the inspection to the [shareholder's] stated purpose. Undergirding this discretion is a recognition that the interests of the corporation must be harmonized with those of the inspecting [shareholder]." (Internal quotation marks omitted.)); *Kelley Mfg. Co.* v. *Mar-*

ment arising from such a dividend policy alone, will constitute a proper purpose"); *Taylor* v. *Eden Cemetery Co.*, 337 Pa. 203, 208–209, 10 A.2d 573 (1940) (concluding that concern about whether salaries paid to officers and trustees of defendant company were excessive was proper purpose for seeking inspection). In their trial briefs, the plaintiffs assumed that they were required to establish credible proof but argued that it was the lowest possible burden of proof. During argument by counsel, the trial court questioned the basis for applying this standard to § 34-255i.

*tin*, 296 Ga. App. 236, 241, 674 S.E.2d 92 (2009) ("the trial court has much discretion . . . to determine whether the purpose named is a proper one" (internal quotation marks omitted)), cert. denied, Georgia Supreme Court, Docket No. S09C1052 (May 18, 2009); *Parsons* v. *Jefferson-Pilot Corp.*, 333 N.C. 420, 429–30, 426 S.E.2d 685 (1993) ("[T]he record does not show that the plaintiff had any specific knowledge of corporate mismanagement or of any improper use of corporate assets at the time that she made the demand. The record shows only that the plaintiff was dissatisfied with the return on her investment in the defendant corporation. In light of the plaintiff's actual knowledge at the time of the demand, it would not have been feasible to state her purpose with any greater particularity. . . . Although the plaintiff's demand was broad . . . there is nothing in this record to show that the plaintiff could have described the desired records with any greater particularity than she did . . . ."). In addition, because inspection of LLC records is permitted only to the extent it is "just and reasonable"; General Statutes § 34-255i (b) (2); the trial court may limit the scope of inspection if the request is too burdensome or inadequately justified. Cf. *Thomas & Betts Corp.* v. *Leviton Mfg. Co.*, supra, 681 A.2d 1035 (noting that provision vesting trial court with discretion to prescribe inspection limitations that are just and proper gives it "wide latitude in determining the proper scope of inspection"); *Kasten* v. *Doral Dental USA, LLC*, 301 Wis. 2d 598, 637–38, 733 N.W.2d 300 (2007) ("[O]ne purpose of the language 'upon reasonable request' is to protect the company from member inspection requests that impose undue financial burdens on the company. Whether an inspection request is so burdensome as to be unreasonable requires balancing the statute's bias in favor of member access to records against the costs of the inspection to the company. When applying this balancing test, a

Benjamin *v.* Island Management, LLC

number of factors may be relevant . . . . Decisions of [a trial] court regarding the reasonableness of an inspection request are addressed to its discretion.'' (Footnotes omitted.)).

An LLC resisting inspection also can produce evidence to demonstrate that the statutory conditions have not been met. The company may, as the defendant unsuccessfully attempted to do in the present case, persuade the court that an improper purpose is the true, primary purpose.[27] Cf. *Alexandria Venture Investments, LLC* v. *Verseau Therapeutics, Inc.*, Docket No. 2020-0593-PAF, 2020 WL 7422068, *5 (Del. Ch. December 18, 2020) (''Once the court has found that the [shareholder's] primary purpose is proper, any secondary or ulterior [purpose] is irrelevant. The court may, however, take into account an ulterior purpose when considering the permitted scope of inspection.'' (Footnote omitted.)); *Advance Concrete Form, Inc.* v. *Accuform, Inc.*, 158 Wis. 2d 334, 344, 462 N.W.2d 271 (App. 1990) (''[When] a [shareholder] who seeks inspection of corporate books and records has two purposes, one [shareholder related] and the other not, the critical inquiry is whether the [shareholder related] purpose predominates over the ulterior purpose. . . . If the ulterior purpose is the shareholder's primary purpose, the shareholder may not obtain inspection relief under a [proper purpose] statute.'' (Citation omitted; internal quotation marks omitted.)). If the company believes that requested records are not directly connected to

_____

[27] A Connecticut Superior Court case cited by the defendant proves this very point. See *Strauss* v. *Educational Innovations, Inc.*, Docket No. CV-08-4014480-S, 2008 WL 5220278, *5–6 (Conn. Super. November 14, 2008) (finding that shareholder was not entitled to inspection when ''there was no credible proof'' supporting his allegations of mismanagement and there was evidence that inspection was sought for improper purposes—shareholder ''was engaging in a similar, possibly competing business'' and sought inspection to ''harass the company and its officers and directors and/or [to] go on a 'fishing expedition' '').

the member's purpose, it can submit those records to the court for an in camera examination. See Model Business Corporation Act, supra, § 16.02, comment (3), pp. 16-9 through 16-10; see also, e.g., *Parsons* v. *Jefferson-Pilot Corp.*, 106 N.C. App. 307, 322–23, 416 S.E.2d 914 (1992), rev'd in part on other grounds, 333 N.C. 420, 426 S.E.2d 685 (1993).

Finally, the CULLCA recognizes that an LLC may, through its operating agreement, impose reasonable restrictions on the availability and use of information provided for under § 34-255i. See General Statutes § 34-243d (c) (8); see also Unif. Limited Liability Company Act § 105 (c) (8), supra, 6C U.L.A. 27–28. As we explain in part II of this opinion, the defendant's operating agreement in the present case expands, rather than restricts, the statutory access to LLC records.

In sum, we conclude that there is neither a textual nor a policy basis that justifies reading a credible proof of mismanagement requirement into § 34-255i. A trial court may, however, consider the absence of facts demonstrating a basis to suspect mismanagement, in combination with other factors, in determining whether an improper purpose is the true reason for the demand and the extent to which disclosure is just and reasonable under the circumstances. Although our reasons differ somewhat from those on which the trial court's decision rested, that court correctly determined that there is no credible proof of mismanagement requirement in § 34-255i.

C

The defendant also claims that the trial court improperly failed to apply the requirement under § 34-255i (b) (2) (C) that "the information sought is directly connected to the member's purpose" for all four categories of information at issue, as well as the requirement that the information sought be stated with "reasonable par-

ticularity'' for two categories of information. General
Statutes § 34-255i (b) (2) (B). It contends that, because
it is challenging the application of an improper legal
standard, this claim presents an issue of law subject to
plenary review. The plaintiffs contend that the issue is
not whether the trial court failed to apply these require-
ments but, rather, a challenge to the evidentiary support
for the trial court's conclusion, which is subject to
review for clear error.

We do not agree entirely with either characterization.
The defendant raises some legal arguments that impli-
cate the proper construction of these requirements and
the trial court's decision. Other arguments effectively
challenge whether there is support in the record for
these requirements having been met. As to this latter
category, although a handful of cases have treated these
requirements as giving rise to factual findings subject
to review for clear error; see, e.g., *Pagett* v. *Westport
Precision, Inc.*, supra, 82 Conn. App. 539; *Towle* v. *Rob-
inson Springs Corp.*, supra, 168 Vt. 228; we conclude
that the abuse of discretion standard is more apt. As
we explained in part I B of this opinion, the statutory
conditions for inspection require the balancing of many
factors. Subordinate factual findings would be subject
to the clearly erroneous standard, but the ultimate
determination involves the exercise of discretion. See,
e.g., *Kelley Mfg. Co.* v. *Martin*, supra, 296 Ga. App. 241
(distinguishing review of findings from discretionary
determination).

1

The defendant argues that the trial court was required
to determine that there was a direct connection between
each of the categories of information at issue and one
of the specific purposes asserted in the demands—(1)
to value the Benjamin 2002 Trust's interest in the defen-
dant, and (2) to investigate the appropriateness of fees

paid to the defendant from other family entities and the fees paid to the defendant's managers—but failed to engage in such an analysis. It contends that the court, at best, could be said to have found that some of the information sought could expose mismanagement of some nature. It also contends that, for each of the contested categories of information, the court either failed to make a determination regarding the direct connection requirement, relied on a connection to a purpose that was not alleged in the demands, or relied on findings or principles that were irrelevant or erroneous. A recurring theme in the defendant's brief is that production of the remaining information is unnecessary in light of the adequacy of the records it has already provided, and, therefore, the remaining information lacks a direct connection to the inspection purposes alleged.

We disagree with several propositions on which the defendant's claim rests. Most of these propositions depend on an artificially strict and unduly literal interpretation of the trial court's decision and the underlying testimony. The defendant overlooks settled law that "[a] judgment is entitled to reasonable presumptions in support of its validity." (Internal quotation marks omitted.) *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 7, 513 A.2d 1218 (1986). "[A] claim of error cannot be predicated on an assumption that the trial court acted [improperly]. . . . Rather, we are entitled to assume, *unless it appears to the contrary*, that the trial court . . . acted properly, including considering the applicable legal principles." (Citations omitted; emphasis added; internal quotation marks omitted.) *Rosenblit* v. *Danaher*, 206 Conn. 125, 134, 537 A.2d 145 (1988). In the present case, the trial court expressly acknowledged that § 34-255i required that the information sought has a direct connection to a proper purpose and cited case law interpreting that requirement. Although it did not make an express finding of

a direct connection for each category of information at issue, we presume, in the absence of evidence to the contrary, that it concluded that this requirement was met.

The defendant also mistakenly assumes that the trial court did not rely on the plaintiffs' valuation purpose and therefore discounts any testimony relating to that purpose to establish the requisite connection. The trial court quoted case law regarding proper inspection purposes and underscored two of the examples given, corresponding to the two purposes explicitly specified in Helen's demands. One of those examples was "to determine the value of [the shareholder's] shares . . . ." (Emphasis omitted; internal quotation marks omitted.) In discussing the general ledger, the trial court recited reasons Weisman gave in his testimony for needing various information, one of which unambiguously related to valuation. Furthermore, because the plaintiffs' theory was that excessive compensation was not just a mismanagement issue but also affected valuation, any evidence relating to the former necessarily supported the latter.

The defendant additionally assumes, incorrectly, that the plaintiffs' sole mismanagement concerns were excessive manager compensation and management fees. Those two matters were identified as being of particular concern in Helen's final demand, but the demand did not limit itself in this respect. Instead, the demand broadly identified one of its two purposes as to "ascertain the condition and affairs of such entities so that the Benjamin 2002 Trust may exercise its rights as a member of the [defendant] in an informed manner." We are therefore inclined to view the purpose cited by the trial court in connection with the records of payments made on behalf of the Benjamin 2002 Trust—"achieving and assuring lawful trust administration"—as consistent with the demand.

Benjamin *v.* Island Management, LLC

We also disagree with the defendant's interpretation of the direct connection requirement insofar as it seems to equate that requirement to a test of strict necessity. The defendant's view is that, if it has provided sufficient records from which the plaintiffs can accomplish their purposes, any remaining records lack a direct connection to those purposes. We recognize that Delaware applies a strict necessity test; see, e.g., *Security First Corp.* v. *U.S. Die Casting & Development Co.*, supra, 687 A.2d 569 ("[t]he plaintiff bears the burden of proving that each category of books and records is essential to the accomplishment of the [shareholder's] articulated purpose for the inspection"); see also, e.g., *Cain* v. *Merck & Co.*, supra, 415 N.J. Super. 334 (following *Security First Corp.*); and that cases from some other jurisdictions have cited the necessity of the record when considering whether the right to inspection was established. See, e.g., *Computer Solutions, Inc.* v. *Gnaizda*, 633 So. 2d 1100, 1102 (Fla. App. 1994); *Cardiovascular Specialists, P.S.C.* v. *Xenopoulos*, 328 S.W.3d 215, 219 (Ky. App. 2010).

We find no support for a strict necessity test, however, in the plain meaning of "direct connection,"[28] which is more suggestive of relevance than indispensable need. See, e.g., *Bacompt Systems, Inc.* v. *Peck*, 879 N.E.2d 1, 6 (Ind. App. 2008) (The court rejected argument that the report sought was "not directly related to a proper purpose because, given the 'plethora' of documents provided, the . . . report is not necessary and essential. . . . [T]he provisions of Indiana Code [§] 23-1-52-2 do not articulate such a 'necessary and essential' standard for determining whether a requested document is directly connected with a share-

[28] See Random House Unabridged Dictionary (2d Ed. 1993) pp. 432, 559 (defining "connection" as "association" or "relationship" and "direct" as "proceeding in a straight line" or "without intervening persons, influences, factors"); see also Webster's Third New International Dictionary (2002) p. 481 (defining "connection" as "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)").

holder's purpose. In any event, the relationship of the
. . . report to the [shareholder's] purpose is a factual
matter for the trial court upon remand to determine.
But the mere fact that a 'plethora' of documents has
already been provided does not preclude a factual find-
ing that the . . . report is nevertheless directly con-
nected to a proper purpose.''); see also, e.g., *Dewey* v.
*Bechthold*, 387 F. Supp. 3d 919, 928 (E.D. Wis. 2019)
(''A record is 'directly connected' to the purpose of
determining the book value of a share if the record
*assists* in valuing the company. That is, a record is
'directly connected' to the determination of book value
if an analyst would need the record in order to conduct
a valuation.'' (Emphasis added.)); *Pagett* v. *Westport
Precision, Inc.*, supra, 82 Conn. App. 539 (upholding
trial court's direct connection conclusion because of
''a correlation'' between stated purpose and documents
requested).

Cumulative sources may be important to confirm the
correctness of information in hand or may expose
inconsistencies. If information is duplicative and the
effort needed to produce it imposes an undue burden
on the company, that concern is better left to the court's
discretion under the consideration of whether allowing
inspection is ''just and reasonable . . . .'' General Stat-
utes § 34-255i (b) (2).

Finally, the defendant suggests that it is insufficient
for the plaintiffs' witnesses to make assumptions about
what they expect the records to reveal and that the
trial court is required to credit testimony to the contrary
by defense witnesses.[29] We disagree with both proposi-

_____

[29] In its brief to this court, the defendant cites testimony from Weisman
as to information about a specific Ziegler business enterprise that he claimed
would be relevant and testimony from Romanow indicating that the defen-
dant had no involvement with that enterprise. Because the defendant makes
a broad legal argument that the proper legal standard was not applied to
any of the categories of information sought and makes no claim that specific
information sought should not have been ordered to be disclosed, we express
no opinion on the propriety of ordering inspection as to any particular piece
of information.

Benjamin *v.* Island Management, LLC

tions. The trial court is not required to credit a witness’ testimony. See, e.g., *Osborn* v. *Waterbury*, 333 Conn. 816, 824 n.5, 220 A.3d 1 (2019). Moreover, a comment to the Model Business Corporation Act suggests that, “[i]f disputed by the corporation, the ‘connection’ of the records to the shareholder’s purpose may be determined by a court’s in camera examination of the records.” Model Business Corporation Act, supra, § 16.02, comment (3), pp. 16-9 through 16-10; see, e.g., *Parsons* v. *Jefferson-Pilot Corp.*, supra, 106 N.C. App. 322–23 (remanding case to trial court to reconsider direct connection issue because trial court improperly had relied on purpose stated in shareholder’s pleadings/ motions rather than in demand and ordering trial court “to conduct an in camera examination of the desired records to determine which records, if any, are directly connected with the plaintiff’s purpose”). The contested documents were not submitted for such examination in the present case.

Having reviewed the record, we are not persuaded that the trial court abused its discretion in concluding that there was a direct connection between the four categories of information sought and the proper purposes of inspection.

2

The defendant also contends that two types of information sought at trial—the general ledger and employee compensation—were not requested with “reasonable particularity”; General Statutes § 34-255i (b) (2) (B); because neither was requested in any of Helen’s demands.

We agree with the trial court that several of the twenty-seven categories cited in the fourth demand referenced information of the type that would be in a general ledger and that this reference was sufficiently particular to apprise the defendant about the informa-

Benjamin *v.* Island Management, LLC

tion needed. See, e.g., *Sunlitz Holding Co., W.L.L.* v. *Trading Block Holdings, Inc.*, 17 N.E.3d 715, 722 (Ill. App.) ("[T]he particularity requirement . . . is a relative one, turning on the degree of knowledge that a movant in a particular case has about the documents he requests. . . . [T]he shareholder's request must be sufficient to apprise a [person] of ordinary intelligence what documents are required, depending on the facts and circumstances of each case." (Citations omitted; internal quotation marks omitted.)), appeal denied, 21 N.E.3d 719 (Ill. 2014).

The plaintiffs effectively conceded at oral argument before this court, however, that employee compensation was not requested in any written demand with reasonable particularity. They acknowledged that their interest in this information arose after the complaint was filed, when Romanow's deposition revealed that one of Cynthia's children was employed by the defendant, and, therefore, their entitlement to this information is contractual only. We turn, therefore, to the judgment rendered on count two, the violation of the operating agreement, to determine whether the plaintiffs were entitled to employee compensation information.[30]

II

Section 5.7 of the defendant's operating agreement provides in relevant part: "Upon request, each [m]ember . . . shall have the right, during ordinary business hours, to inspect and copy any and all of the books

---

[30] Because count two must be reached under any circumstances, a legitimate question arises as to why our analysis does not begin and end there. We note that the trial court's decision in the present case expressly retained jurisdiction over the case "to resolve any dispute which may arise concerning the accessibility to particular documents not included within the [four] broad categories noted [in its decision]." The interests of judicial economy impel us to rule on the contours of the statutory right to inspection under these circumstances.

and records of the [c]ompany at the expense of the [m]ember . . . making such request.'' The trial court observed that this provision unambiguously provides a more expansive right of inspection than is afforded by statute and permits such inspection upon an informal request rather than a written demand. The defendant does not contend otherwise; nor does it contend that any particular information sought for inspection falls outside of this provision.

The defendant instead claims that, as litigated in the present case, the count alleging a violation of the operating agreement is purely derivative of the count alleging a statutory violation and, therefore, cannot provide an independent basis to support the judgment in favor of the plaintiffs. It points to the fact that each of the written demands expressly and exclusively invoked § 34-255i (or its predecessor) as authority for the demand and emphasizes allegations in the complaint citing those written demands as the basis for the action. It also points to the fact that the operating agreement has a mandatory arbitration provision. The defendant contends that, under these circumstances, it had no notice or reason to suspect that Helen or the plaintiffs were making a demand under the operating agreement and would have invoked the arbitration provision if an independent claim under the operating agreement had been asserted. We disagree.

The defendant conflates the issues of whether there was a demand under the agreement and whether it had fair notice that the plaintiffs were advancing a claim under the agreement. The operating agreement requires nothing more than an inspection ''request''; it does not require that the request expressly invoke the operating agreement. The defendant points to no text in the agreement that suggests otherwise.

We agree that, because all of the demands expressly and exclusively invoked § 34-255i or its predecessor,

the defendant may have lacked fair notice that Helen or the plaintiffs were invoking a contractual right to inspect its records prior to the filing of the complaint.[31] The complaint, however, provided the requisite notice. See, e.g., *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536, 51 A.3d 367 (2012) ("The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.)). To read the complaint otherwise would ignore the fact that it is stated in two counts and specifically alleges that Helen, in her capacity as trustee, was seeking an order to compel the defendant to comply with § 34-255i "and [the defendant's] obligations under the operating agreement . . . ." Moreover, if the inspection right and the remedy sought in count two are wholly derivative of the right and remedy sought in count one, as the defendant contends, count two would serve no purpose.

Because the complaint provided fair notice that an independent violation of the operating agreement was alleged, the defendant was afforded an opportunity to press its right to arbitrate any dispute arising under the

[31] The plaintiffs' concession to this court that their interest in employee compensation information arose after the demands were made; see part I C 2 of this opinion; does not similarly compel the conclusion that Helen failed to make a "request" for that information that would satisfy the less formal requirements of the operating agreement. The plaintiffs' written demands included an ambiguous request for information regarding management arrangements, management fees, and "other such arrangements or fees . . . ." The plaintiffs specifically alleged in their complaint that the defendant had failed to produce records "showing compensation and benefits paid to or provided for each . . . officer *and employee* annually . . . ." (Emphasis added.) Because the operating agreement does not require the formalities of a demand that the statute does, we presume that there was a "request" made in accordance with the operating agreement. The defendant makes no argument that there was no request that met the requirements of the operating agreement, only that the count alleging a violation of the operating agreement is wholly derivative of the count alleging the statutory violation, which imposes more formal requirements.

Benjamin *v.* Island Management, LLC

agreement. The trial court's decision thoroughly and appropriately explained why the defendant was required to plead arbitration as a special defense; see Practice Book § 10-50; and why its failure to do so constituted a waiver of that right. As the trial court further observed, the defendant also failed to make a formal demand for arbitration in any other form. See General Statutes § 52-409 (motion to compel arbitration and to stay judicial proceedings).

The defendant alternatively suggests that the trial court improperly construed § 5.7 of the operating agreement to allow "carte blanche access" to all of the defendant's records for any purpose because a requirement is implied in such provisions that the members seeking information must have a proper purpose that is not adverse to the company. The case cited by the defendant does not stand for this proposition. Rather, under the so-called "implied improper purpose" rule, when a proper purpose is not expressly required, the entity can avoid inspection if it proves that disclosure would, in fact, be adverse to the entity. See, e.g., *Arbor Place, L.P.* v. *Encore Opportunity Fund, LLC*, Docket No. CIV. A. 18928, 2002 WL 205681, *4 n.9 (Del. Ch. January 29, 2002); *Bond Purchase, LLC* v. *Patriot Tax Credit Properties, L.P.*, 746 A.2d 842, 859 (Del. Ch. 1999). The trial court rejected the defendant's various improper purposes defenses, and, although the defendant criticizes these conclusions and the supporting factual findings in footnotes in its appellate brief, it has not directly challenged those rulings on appeal.

Count two of the complaint, alleging a violation of § 5.7 of the operating agreement, therefore, supports the trial court's decision ordering the defendant to permit inspection of its employee compensation information.

The judgment is affirmed.

In this opinion the other justices concurred.